UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA   )
                                                )
      v.                                 )         Criminal No. 04-30032-MAP
                                                )
FRANCIS G. KEOUGH III            )
                 Defendant   )

MOTION FOR PRODUCTION OF STATEMENTS
OF ALLEGED CO-CONSPIRATOR

      Now comes the Defendant, Francis Keough, and hereby moves this Honorable Court for an Order directing the Government to disclose all statements, whether written, recorded or otherwise, of the alleged unindicted co-conspirator, Fred Ware, in the possession, custody or control of the government, including the complete proffer provided by said Fred Ware to the Government.

      As grounds therefore, the Defendant states:

      1.     The Defendant has been charged by Indictment with one count of Extortion, in violation of 18 USCA 1951, wherein it is alleged that the Defendant "unlawfully obtained $29,000.00 from The Ware Group, Inc., which property was not due the defendant and The Ware Group's consent having been induced by wrongful use and threat of use of economic harm and under color of official right."

      2.     Pursuant to automatic discovery under the Local Rules, the Government has advised the Defendant that it alleges that the individual known as Fred Ware is an unindicted co-conspirator regarding the charge of extortion returned against the Defendant, and that said Fred Ware has provided statements to the Government pursuant to a proffer agreement.

3. On or about April 22, 2005, Defendant made his formal request for discovery upon the Government, including a request for statements of unindicted co-conspirators.

4. The Government has failed and refused to deliver said statements to the Defendant, asserting that any statements of witnesses will be produced no sooner than mandated by Jencks and the Local Rules.

5. Statements of the alleged co-conspirator, Fred Ware, should be disclosed forthwith, so that the Defendant has a fair opportunity to prepare his defense, and that a hearing can be held as to the admissibility of such statements. See, e.g., United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917 (1979); United States v. Santiago, 582 F.2d 1128 (7th Cir. 1978); United States v. MacFarlane, 759 F. Supp. 1163 (W.D. Pa. 1991). Because under Fed. R. Evid. 801(d)(2)(E) a statement of an alleged co-conspirator may be admitted against the Defendant under circumstances where the Defendant has no knowledge of the existence or content of such statements, it is essential for disclosure of such statements to the Defendant at the earliest possible date in order to avoid prejudice at trial. Id.

6. Further, Defendant has reason to believe that the alleged co-conspirator, Fred Ware, is under investigation for numerous other criminal acts similar to the acts alleged in the present case, including work performed by The Ware Group relating to the Southwest Community Health Center and Fred Swan, as well as other non-profit organizations related to Mason Square. The Court should order the Government to immediately disclose and deliver to the Defendant said complete proffer of Fred Ware, including such memoranda of interviews, investigators' notes and reports, for reason that said statements, memoranda of interviews and investigators' notes and reports contain exculpatory material required to be delivered to the Defendant, as mandated by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

7. First, the similar nature of the allegations involved in the present case and other projects in which Fred Ware is involved suggests that the complete proffer provided by Fred

Ware will contain information establishing that if any unlawful activity occurred in this case, it was perpetrated by Fred Ware. The evidence contained in Fred Ware's complete proffer is material and exculpatory because said evidence will tend to prove that: a) the Defendant did not have the requisite mens rea to have committed the crime of extortion; b) that if any unlawful conduct was perpetrated in this case, it was perpetrated by Fred Ware – consistent with his history of conduct in the other matters involving the Ware Group; c) Fred Ware's testimony cannot be trusted due to his extensive history of criminal conduct he has perpetrated (including conduct similar to that alleged in the present case) as detailed in his complete proffer; and d) Fred Ware's testimony is being provided against the Defendant in order to obtain favorable treatment from the Government "in connection with a public corruption investigation involving the Springfield Housing Authority and related entities," the details of which are set forth in his complete proffer.

        8.      Accordingly, the Government is obligated to disclose the complete proffer by Fred Ware because the material contained therein is "favorable" to the Defendant's defense because it tends to establish that the Defendant did not have the requisite criminal mens rea for the alleged offense and that if any wrongful acts were perpetrated in this case, it was done so by other individuals. In this regard, the Supreme Court and the First Circuit Court of Appeals have recently held that when determining whether evidence at issue is "material" for Brady purposes, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." United States v. Lemmerer, 277 F.3d 579 (1st Cir. 2002); quoting Strickler v. Greene, 527 U.S. 263, 289-90, 119 S. Ct. 1936, 144 L. Ed.2d 286 (1999); see also Bagley, 473 U.S. at 675, 105 S. Ct. 3375 (explaining that prosecutor is obligated to disclose evidence that, if suppressed, would "deprive the defendant of a fair trial"). In the present case, the materiality of the evidence contained in the complete proffer satisfies both the

old and new standards.

9. Further, the extensive evidence of criminal conduct performed by Fred Ware set forth in his complete proffer provides exculpatory impeachment material critical to the Defendant's defense, as Fred Ware is an alleged unindicted co-conspirator who will be testifying against the Defendant. It is well established that impeachment evidence qualifies as Brady material. United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio v. United States, 405 U.S. 150, 154 (1972). As the Court explained in Giglio: "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule [of Brady]. Giglio, 405 U.S. at 154. See, e.g., United States v. Osorio, 929 F.2d 753 (1st Cir.1991); United States v. Devin, 918 F.2d 280 (1st Cir.1990) (information useful to impeach prosecution witnesses falls within the Brady rubric); United States v. Ingraldi, 793 F.2d 408, 411 (1st Cir.1986) (same).

10. In the present case, the information contained in Fred Ware's complete proffer setting forth Fred Ware's extensive criminal conduct would serve to erode his credibility significantly and thereby diminish the weight a jury would give to his testimony. See, e.g., United States v. Ingraldi, 793 F.2d at 411 (citing United States v. Bagley, 473 U.S. at 676). Accordingly, the evidence contained in Fred Ware's *complete* proffers involves material evidence under the Brady rubric that must be delivered to the Defendant forthwith.

11. An Assistant United States Attorney using a witness with an impeachable past has a constitutionally derived duty to search for and produce impeachment information requested regarding the witness. Giglio v. United States, 405 U.S. 150 (1972). This constitutional imperative is not merely good policy but a mandate. In complying with Brady, a prosecutor has a duty to find any evidence favorable to the Defendant known by the prosecution team, which includes their fellow attorneys and the law enforcement agencies or FBI agents investigating the crime, that is, those acting on the government's behalf in the case against the accused. See, e.g.,

Kyles v. Whitley, 514 U.S. 419, 437 (1995); Strickler v. Greene, 527 U.S. 263, 281 (1999); United States v. Osorio, 929 F.2d 753, 761-62 (1st Cir.1991).

12.     The First Circuit explained the constitutional mandate to disclose impeachment information in United States v. Devin, 918 F.2d 280 (1st Cir.1990) and United States v. Osorio, 929 F.2d 753 (1st Cir.1991), neither of which set any limit on the nature of impeaching material, and given its broad nature, must be viewed as being coincident with the scope of cross-examination.  Accordingly, under Brady, Devin and Osorio, the Government is obliged to produce investigators' notes and reports, memoranda of interviews, and witness statements, regardless of whether they would qualify as Jencks statements – if said notes, reports, memoranda and statements contain impeachment information, i.e., exculpatory information as required to be produced by Brady, Devin and Osorio.  Such impeachment documents include *all* documents which tend to show the bias, prejudice, personal interest of any government witness to testify in favor of the government or against any defendant, and any documents which tend to show a special relationship of the witness or hostility of the witness either to any other government witness or to any of the defendants in a trial.

13.     Likewise for impeachment purposes, all prior "bad acts" must be disclosed, particularly when dealing with witnesses who have received either immunity or any sort of promise, inducement, or reward in exchange for their testimony as they relate to these prior bad acts.  "Bad acts" constitute such conduct that are offenses against the law, either against federal law or against the laws of any state in which the acts were committed and could be prosecuted. It is important to note that it is not necessary the acts resulted in prior convictions or arrests, but simply that the acts were committed and the witness may be biased to testify in favor of the Government to avoid prosecution by either state or federal government for the misconduct.  The details of those bad acts are the things a witness would fear that he would be prosecuted for if he were not to "cooperate" with the Government.  This is particularly material for impeachment

5

purposes when the evidence of prior bad acts goes to the reputation of the witness for truth or veracity or any specific acts which point to the witness having lied on other occasions.

14. Further, the Government is obliged to produce evidence, extrinsic or otherwise, that tends to contradict any Government witness about anything the Government reasonably expects the witness will testify upon. This includes any self-contradiction of the witness by any prior inconsistent statement or act prior to trial.

15. Lastly, it must be noted that the constitutional dictates of Brady, not the Jencks Act, govern the disclosure of evidence which is both Brady and Jencks material. United States v. Snell, 899 F. Supp. 17, 21 (D. Mass.1995); United States v. Beckford, 962 F. Supp. at 791, citing United States v. Tarantino, 846 F.2d 1384, 1414-15 n. 11 (D.C.Cir.1988) (Jencks Act timing of disclosure limitations do not lessen Government's obligations to disclose exculpatory material under Brady); see also United States v. Starusko, 729 F.2d 256, 263 (3rd Cir.1984); United States v. Gallo, 654 F. Supp. 463, 474 (E.D.N.Y.1987) ("If witness' [sic] statements contain material exculpatory to the defendant, due process requires pretrial production under Brady despite the fact that it may be Jencks material as well." [citations omitted] ). As held in United States v. Snell, supra, where the evidence at issue is exculpatory material required to be disclosed under Brady, that material is to be turned over immediately pursuant to Local Rule 116.1, even though it constitutes a "statement" under the Jencks Act. Snell, 899 F. Supp. at 19. Where a Defendant's constitutional due process rights under Brady clash with the procedural dictates of the Jencks Act, the rights afforded to the Defendant must prevail. See United States v. Narciso, 446 F. Supp. 252, 271 (E.D. Mich.1977) ("[W]hen two principles of law conflict with one another . . . the principle favoring greater discovery in favor of the accused must prevail, particularly where . . . the principle favoring disclosure is of constitutional origin.").

Accordingly, by all of the above, this Court should issue an Order directing the Government to disclose all statements, whether written, recorded or otherwise, of the alleged

unindicted co-conspirator, Fred Ware, in the possession, custody or control of the Government, including the complete proffer provided by Fred Ware to the Government.

                            THE DEFENDANT
                            FRANCIS G. KEOUGH III


                            By: /s/ Jack F. St. Clair
                                Jack F. St. Clair, Esq.
                                73 Chestnut Street
                                Springfield, MA 01103
                                Tel.: (413) 737-5000
                                Fax:  (413) 731-1302
                                BBO # 438100


## CERTIFICATE OF SERVICE

    I, Jack F. St. Clair, Esq., hereby certify that I have caused a copy of the foregoing document to be served (via electronic filing) upon William M. Welch II, Assistant United States Attorney, United States Attorney's Office, 1550 Main Street, Springfield, MA, 01103, this 20th day of May 2005.

                                /s/ Jack F. St. Clair
                                Jack F. St. Clair, Esq.