**DANIEL D. KELLY**
**ATTORNEY AT LAW**
**101 STATE STREET, SUITE 715**
**SPRINGFIELD, MA 01103**
**TELEPHONE (413)-733-0770**
**FACSIMILE (413)-733-1245**
**Email: dkelly@dankellylawoffice.com**

William M. Welch II, Esquire
United States Attorney's Office
Federal Building and Courthouse
1550 Main Street, Room 310
Springfield, MA 01103


Re:    **United States v. Francis Keough, et al.**
       **CR-N-30032-MAP**


Dear Attorney Welch,

      Upon review of the automatic discovery letters and documents provided by your office, and the Second Superseding Indictment regarding the above-referenced matter, I hereby make the following request pursuant thereto, and Rules 12(b)(4) and 16 of the Federal Rules of Criminal Procedure and Local Rule 116. This request is made in supplementation to the request made by prior counsel in this dated April 22, 2004, and filed with the court on May 15, 2005, and currently listed as document number 18 in this case. In addition, I am hereby incorporating the requests made in said document number 18 herein, as to the Second Superseding Indictment returned by the Grand Jury in this case on January 12, 2006.

      Pursuant to the rulings, principles and authorities set forth in the cases of United States v. de la Cruz-Paulino, 61 F.3d 986 (1st Cir. 1995); United States v. Bortnovsky, 820 F.2d 572 (2nd Cir. 1987); United States v. Anderson, 416 F.Supp.2d 110 (D.D.C. 2006); United States v. Falkowitz, 214 F. Supp. 2d 365 (S.D. N.Y. 2002); United States v. Upton, 856 F. Supp. 727 (E.D.N.Y. 1994); United States v Laughlin, 768 F. Supp 957 (N.D.N.Y. 1991); United States v. Poindexter, 727 F. Supp. 1470 (D.D.C. 1989); United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y 1978); United States v. Countryside Farms, Inc., 428 F.Supp. 1150, 1154 (D.Utah 1977), and due to the voluminous documents involved in this case, the Defendant requests that the Government specifically identify:

    a)      which documents the Government intends to offer at trial;

    b)      which documents on which a Government witness will rely or to which said witness will refer; and

    c)      which documents are material to Defendant's preparation of his defense.

Please note that for purposes of this request, the term "document" shall include all books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control.

In addition, as to each item of documentary or tangible evidence obtained by the Government as described herein, the Defendant requests that the Government provide a statement as to how such evidence was obtained and, if the evidence was obtained by seizure or by subpoena, a description of the date on and exact location at which the property was seized and party from whom it was subpoenaed, and all documents relating thereto:

1.      Any and all statements of Defendant's "agents, representatives and employees," which are deemed to be made pursuant to the Defendant's authority, as to which the statement thereby constitutes a "statement by the Defendant" which is discoverable under Federal Rule of Criminal Procedure 16(a)(1)(A).  This request includes any and all statements, oral, written or recorded, or the substance of any oral statements, made by or purported to have been made by Defendant's alleged agents, representatives and employees, whether before or after arrest, whether or not the Government intends to offer the statements in evidence at the trial, including but not limited to Grand Jury testimony; and any documents, instruments or forms prepared by, signed, reviewed, or otherwise adopted by Defendant's agents, representatives and employees as their own statements and the portion of any written record containing the substance of those statements.

2.      Any and all statements of the co-Defendants and alleged "co-conspirators", including but not limited to;  Alfonso Carrano, Robert Cote, Daniel McNamee, Jose Roman, Paul Sarno, Thomas Smith, and Frank Ware (whether indicted or unindicted), whether written or oral, subsequently reduced to writing, tape recorded, transcribed or summarized in agent's reports, or copies thereof, within the possession, custody or control of the Government, the existence of which is known or by the exercise of due diligence may become known to the attorneys for the Government.

3.      Any and all reports and results of scientific tests, experiments and examinations, including specifically any and all related notes, logs, charts, work papers and raw test results, including without limitation all such reports and results, etc., relating to handwriting analysis, scientific identification or other analysis of documents purportedly used in furthering the alleged criminal activities and/or conduct in this case.

4.      Any and all evidence and/or information pertaining to any alleged conduct of the Defendant which the government intends to introduce at trial as constituting an implied admission of guilt by the Defendant.

5.      Any and all evidence and/or information that the government intends to offer at trial pertaining to the conduct by the Defendant (or of any co-defendant) that is not charged on the face of the indictment, that the government believes is admissible to show identity, common plan, scheme or design and the like, including a description of the conduct that the government will seek to introduce.

6.      Any and all evidence from and/or information about any eyewitness of alleged criminal

activities or conduct involved in this case for which the prosecution has a name and/or address, and which the government does not intend to call at trial. <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir.1984).

7.    A written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial, as provided by Rule 16(a)(1)(G).

8.    Any and all names and addresses of individual witnesses who the Government intends to call at trial either in its case in chief or as rebuttal witnesses herein.

9.    Any and all names and addresses of persons who have knowledge pertaining to this case, or who have been interviewed by the Government or their agents in connection with this case.

10.    Any and all F.B.I. and local arrest and conviction records of all persons in Paragraphs 8 and 9 the Government plans to call as witnesses.

11.    Written statements of all persons in Paragraphs 8 and 9 who the Government does not plan to call as witnesses.

12.    The name, identity and whereabouts of any informer who gave information leading to the seizure and arrest of the Defendant herein or investigating of this cause or the investigation, arrest or seizure of evidence in other causes that may have lead to the identification of witnesses, evidence or arrest of the Defendant in this cause.

13.    All tangible objects, books, papers, documents, fingerprints, tape recordings, voice prints, handwriting samples, video recordings, motion pictures, photographs, maps, or copies or portions thereof, which the Government has gathered as evidence against defendants or which are material to the preparation of their defenses, regardless of whether the Government intends to offer them in its case-in-chief, including, but not limited to:

a)    All financial records of any alleged co-conspirators (whether indicted or unindicted) and codefendants acquired from any source, including, but not limited to, promissory notes, checks, negotiable instruments and communications with banks and credit agencies, which relate in any way to his or her finances, assets or expenditures;

b)    All financial records of the defendants obtained by the Government during the course of the instant investigation, including, but not limited to, those reflecting deposits of monies in and withdrawals of monies from financial institutions, and those records reflecting transfers of monies between such institutions;

c)    All applications or orders seeking information about any of the Defendants and alleged co-conspirators (whether indicted or unindicted) pursuant to 26 U.S.C. § 6103 (tax return information);

d)    All tape recordings of Defendants' voices made during or in connection with the matters alleged in the indictment, or on any other occasion;

e)    All tape recordings of any statement made by any declarant, which might be offered for any purpose permitted by Federal Rules of Evidence 801(d), 803, 804 or 805;

f)    All enhanced tape recordings and all transcripts of tape recordings requested in subparagraphs d and e, supra;

g)    All devices or machines used for recording Defendants' voices;

h)    All telephone toll records which were acquired as a result of the investigation of Defendants or any alleged co-conspirator (whether indicted or unindicted);

i)    Any documents acquired from the Internal Revenue Service or any other government agencies (federal, state and local) which relate to any alleged co-conspirator (whether indicted or unindicted) or co-defendant, his assets or his expenditures;

j)    All documents, records, bills, forms and/or receipts and like material allegedly signed by any Defendant any alleged co-conspirator (whether indicted or unindicted);

k)    All F.B.I., special agent and police investigative reports, including, but not limited to, surveillance logs or documents reflecting the whereabouts or movements of any Defendant and alleged co-conspirator (whether indicted or unindicted);

l)    A full and complete listing of all tangible objects, books, papers, documents, fingerprints, tape recordings, voice prints, handwriting samples, video recordings, motion pictures, photographs, maps, or copies or portions thereof that have been lost or destroyed, to the extent that such would have been discoverable;

m)    An identification of all of the items requested in the preceding subparagraphs that the Government intends to introduce at trial.

14.    Any and all statements made by any Defendant to, or overheard by, law enforcement officers before or after his/her arrest which are the subject of verbatim or summarized reports or written memoranda by the officers, not otherwise produced, regardless of whether or not such defendant knew that the person to whom he/she was making the statements or who was overhearing the statements was a Government agent.

15.    Any and all statements made by any Defendant to, or overheard by, persons who were acting in the capacity of informants or cooperating individuals, or other third parties, whether or not the Government intends to call such persons as witnesses at trial, which

statements are the subject of verbatim or summarized reports or written memoranda either by the person hearing the statements, or by law enforcement officers, or by other individuals receiving a recital of the Defendant's statements, regardless of whether or not the Defendant knew that the person to whom he/she was making the statements or who was overhearing the statements was an informant or cooperating individual or that the statements would come into the Government's possession, custody or control.

16.    As to each statement described in paragraphs 4 & 5 above, the date and time each such statement was uttered, the location of the declarant and the identity of persons present at the time of its utterance.

17.    The identity, including name and address, of any and all persons who have provided the Government with information containing any statements made by defendants, or whom the Government knows were present when any of defendants' statements in the Government's possession, custody or control were made.

18.    A description of testimony or other evidence which the Government intends to use against any defendant which derives in any way from any confession, admission or statement allegedly made by any defendant.

19.    A list of the names, addresses and present locations of each and every person interviewed by the Government as a prospective, possible, or potential witness in this case, whether or not the Government now intends to call such person as a witness in its case-in-chief at trial, including, but not limited to:

    a)    Informants/witnesses who participated in the activities of the conspiracies, continuing criminal enterprise and the substantive offenses charged in the Indictment;

    b)    Informants/witnesses who were present during any act taken by any defendant, codefendant or alleged coconspirators in furtherance of the conspiracies and enterprise charged in the Indictment;

20.    A list of the names, addresses and present locations of each and every person interviewed by the Government in the course of its investigation into the background, habits, activities, and/or whereabouts of any defendant or co-conspirator (whether indicted or unindicted).

21.    A list of the names, addresses and present locations of each and every:

    a)    Eyewitness to the commission of any overt act of the offenses alleged in the indictment;

    b)    Informant who was present at the commission of any overt act of the offenses alleged in the indictment;

    c)    Unindicted alleged coconspirator known to the Government;

22.     A list of the names and addresses of each and every law enforcement officer, or officer of any agency, whether federal or state, involved in the investigation of this case.

23.     Copies of personnel files of all law enforcement officials involved in the investigation of this matter or whom the Government anticipates calling at trial, including, but not limited to, the personnel files of Special Agents Clifford W. Hedges and Susan Kossler.  United States v. Dominguez -Villa, 954 F.2d 562 (9th Cir. 1992); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Garrett, 542 F.2d 23 (6th Cir. 1976); United States v. Deutsch, 475 F.2d 55 (5th Cir. 1973); United States v. Austin, 492 F. Supp. 502 (N.D. Ill. 1980).

24.     A statement of whether or not any co-defendant or alleged co-conspirator (whether indicted or unindicted) in this case or any such person in any related case has provided information to the Government about the offenses charged in an effort to obtain consideration, i.e., has cooperated or has indicated an intention to provide such information, and, if so, the date when any such communications commenced and the substance of any such communications.

25.     The Defendant specifically requests due to the complexity of this case and the numerous witnesses involved in this case that the Government furnish Jencks Act materials at least three months in advance of trial.

26.     A statement as to whether the Government intends to offer any evidence of any prior criminal conviction of any codefendant, should he/she testify, pursuant to Fed.R.Evid. 609, and, if so, a statement as to the particulars of said conviction; and disclosure of any codefendant's prior record and information as to how much time he/she actually served (if any) under any prior sentence.

27.     Disclosure of any summary, chart or depiction the Government intends to offer as evidence or seeks to utilize before the jury, either during argument or during the presentation of evidence.

28.     A statement as to whether any potential Government witness was subjected to a polygraph test by, or with the awareness of or at the direction of the Government during the investigation and preparation of the instant indictment, or during the investigation and preparation of any related indictment, and, if so, disclosure of all documents relating thereto.

29.     Disclosure of the following regarding voice identification procedures employed by the Government on tape recordings intended to be offered as evidence at trial or on tape recordings obtained during the course of the investigation, whether said recordings were illegal, or the fruit of court-authorized electronic surveillance or consensual recording or monitoring:

        a)      The name and address of each and every person who has identified each and every

defendant or other person as a participant in a recorded conversation;

b) The time, date and place of each and every identification of each participant in a recorded conversation;

c) The names and address of any other persons present, both civilian and law enforcement, when any voice identification occurred;

d) The method used to identify the voice of each defendant and/or participant in a recorded conversation;

e) The name and address of each and every person who, having listened to a tape recorded conversation, failed or refused to identify a voice as being that of a Defendant;

f) The name and address of each and every person who has mistakenly or incorrectly identified a voice as being that of a defendant, or identified a voice as being similar to that of a defendant.

g) The date, time and place of each occurrence of mistaken or incorrect voice identification of a defendant or other participant.

30. Whether any electronic tracking devices were used in the investigation of this case. If so, disclosure of copies of:

a) Any application and order authorizing the use of such device including applications for extension, orders for extension and periodic reports;

b) The dates, times and locations where such device(s) were utilized;

c) The target of such device or devices; and

d) Any reports made relating to the installation and monitoring of such devices.

31. Whether any "mail covers" were utilized in this investigation. If so, disclosure of:

a) The extent and duration of each mail cover;

b) The circumstances under which it was instituted, including the names and positions of all persons who authorized it;

c) The procedure by which it was instituted, including the names, and positions of all persons involved therein;

d) The purported justification for its institution;

e)      The information it produced; and

f)      The names and positions of all persons to whom such information was transmitted and the date of its transmission.

32.    Whether any devices to record telephone numbers dialed or pulsed from a particular telephone (pen registers, traps and/or tracers) were utilized in connection with this investigation. If so, disclosure of:

a)      The telephone number or numbers and subscriber(s) as to which each such device was utilized and the dates and duration of use;

b)      Any application, affidavit, and order authorizing the use of such devices including any applications and orders for extensions and periodic reports;

c)      Copies of each machine print-out showing the date, time and numbers dialed or pulsed; and

d)      Copies of any records showing the names and addresses of the telephone subscribers of the target numbers.

33.    Disclosure of the following with respect to any so-called "consensual" (i.e., "non-Title III") monitoring of oral or electronic communications:

(a)      All tape recordings made as a result of or during the course of any confidential or cooperating informant or undercover agent wearing a concealed body recorder or transmitter;

(b)      Disclosure of all procedures used for the authorization of a body recorder or transmitter, and any consent forms or other documents signed by any confidential informant or cooperating informant in connection with his/her wearing a body recorder or transmitter;

(c)      All documents generated or prepared by agents of the United States, including but not limited to the Federal Bureau of Investigation and local police authorities of Massachusetts, Rhodes Island, or any other state which relate to any confidential or cooperating informant's status as an informant for any governmental agency in connection with this criminal investigation;

(d)      All briefing, debriefing, or other reports or memoranda made in relation to or connection with any confidential or cooperating informant's role or involvement in connection with this investigation;

(e)      What procedures, if any, of the Justice Department were used or followed in connection with any confidential or cooperating informant and a copy of any written policy or procedures which were followed, including but not limited to,

"case initiation reports," "sensitive criminal investigation reports" as contemplated by the U.S. Attorneys Manual; and

(f)     Any and all reports, notes, logs or other evidence concerning physical surveillance of any confidential or cooperating informant during any time when any of them was wittingly or unwittingly acting as an agent of or informant for the Government in connection with this investigation.

34.     Disclosure of all evidence the Government intends to introduce at trial pursuant to Fed.R.Evid. 404(b) against any defendant or co-defendant.

35.     A statement as to whether the Government intends to offer any evidence at trial involving violence and, if so, notice of the details of such violence.

36.     The transcript of testimony given by any person before the Grand Jury in this cause which provides the nature and substance of any statements attributable to any of the Defendants or co-conspirators (whether indicted or unindicted).

37.     The substance of any and all statements or discussions had with any of the co-Defendants, witnesses, or alleged unindicted co-conspirators herein, or with any other such person's Counsel indicating a promise or a suggestion of leniency, compensation, assurance not to prosecute, agreement to proceed on only certain counts of an Indictment, representation with respect to yet uncharged misconduct, or any benefit accruing to said individuals whatsoever in exchange for their compensation, assistance or testimony at the trial herein.

38.     Copies of all invoices, checks, and any and all other documents caused to be delivered by any of the Defendants through the United States Postal Service, or any private or commercial interstate carrier, in furtherance of the alleged conspiracy to defraud the Friends of the Homeless, Inc., the City of Springfield, the Commonwealth of Massachusetts, the United States Department of Housing and Urban Development, and the public.

39.     Copies of all false documentation caused to be submitted by any of the Defendants to the Friends of the Homeless, Inc., the City of Springfield, the Commonwealth of Massachusetts, and the United States Department of Housing and Urban Development in order to obtain reimbursement for expenses incurred by the Friends of the Homeless, Inc. for the personal benefit of any of the Defendants.

40.     Copies of all documents reflecting, relating, or referring to or otherwise indicating or evidencing goods and services procured by the Defendant, Francis Keough, without any competitive bids, from friends, family, and political associates, and documents reflecting, referring to or otherwise indicating the award of jobs to friends, family, and political associates as a reward for actual or anticipated personal services and favors performed on behalf of the Defendant, Francis Keough.

41.     Copies of all documents reflecting, relating or referring to residents and inmates on work

release at the Friends of the Homeless, Inc. that performed personal work for the Defendant, Francis Keough, and documents reflecting, relating, or referring to or otherwise indicating or evidencing that the Defendant, Francis Keough, provided these individuals with housing at the Friends of the Homeless, Inc., waived rental obligations due and owing by these individuals, and arranged for jobs for these individuals both at the Friends of the Homeless, Inc. and elsewhere.

42.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that the Defendants charged personal work performed on the Friends of the Homeless, Inc.'s time, and hours not worked at Friends of the Homeless, Inc. to the Friends of the Homeless, Inc., and in turn caused the Friends of the Homeless, Inc. to seek reimbursement from the City of Springfield, the Commonwealth of Massachusetts and the United States Department of Housing and Urban Development for said hours through the submission of false and fraudulent time sheets.

43.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that the Defendant, Francis Keough, permitted the Defendants, Angel Guzman and Michael Hallahan, Paul Sarno, or anyone else to receive pay for hours not worked at the Friends of the Homeless, Inc.

44.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that the Defendant, Francis Keough, referred the Defendants, Angel Guzman and Michael Hallahan and others to a loan officer for a national mortgage company, who processed and caused the processing of false and fraudulent loan applications on behalf of the Defendants and others.

45.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 21, 1997, the Defendant, Francis Keough, caused the appointment of a Friends of the Homeless, Inc. Board Member for whom the Defendant, Francis Keough, had negotiated a position at the Hampden County Employment and Training Consortium, and that this Board Member later arranged a job at the Hampden County Employment and Training Consortium for the Defendant, Francis Keough's, brother.

46.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about July 31, 1997, the Defendant, Francis Keough, received $50,000.00 in consulting fees related to the Memorial Parish House project in part due to the Defendant, Francis Keough's, assistance in arranging a job at the Hampden County Employment and Training Consortium for the son of the former Executive Director of the Springfield Housing Authority.

47.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about August 1, 1997, the Defendant, Francis Keough, used the $50,000.00 payment referenced in the preceding paragraph towards the purchase of a parcel of property at 59 Oyster Drive, Charleston, Rhode Island, in the name of a nominee.

48.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about October 1, 1998, the Defendant, Francis Keough, certified to the City of Springfield and the United States Department of Housing and Urban Development via the United States mails that the Friends of the Homeless, Inc. accepted $125,000.00 in Community Development Block Grant funds for the renovations of 501 Worthington Street, Springfield, subject to applicable federal and state conflict of interest laws and other governing rules and regulations.

49.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about October 9, 1998, the Defendant, Francis Keough, certified to the Department of Housing and Community Development and the Commonwealth of Massachusetts via the United States mails that the Friends of the Homeless, Inc. accepted $308,500.00 in Department of Housing and Community Development funds for the renovations of 501 Worthington Street, Springfield, subject to applicable federal and state conflict of interest laws and other governing rules and regulations.

50.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about February 26, 1999, and thereafter, the Defendant, Francis Keough, charged building materials for the construction of his Rhodes Island residence to the account of the general contractor handling the 501 Worthington Street renovation in order to obtain the contractor's discount, and because the Defendant, Francis Keough, did not have the money to purchase the goods and materials at the time.

51.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about March 30, 1999, the Defendant, Francis Keough, caused the Friends of the Homeless, Inc. to pay $1,500.69 in funds dedicated to the 501 Worthington Street renovation project to Home Depot for building materials for his Rhode Island residence.

52.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about April 7, 1999, the Defendant, Francis Keough, received a bill for $1,815.34 from the electrical sub-contractor handling the 501 Worthington Street renovation for electrical supplies related to the rough wiring of the Rhode Island residence that had been charged to the sub-contractor's account.

53.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about April 21, 1999, the Defendant, Francis Keough, mailed a letter requesting Community Development Block Grant funds to the City of Springfield's Department of Housing in which the Defendant, Francis Keough, re-certified as to the truth and accuracy of the original representations, to include the conflict of interest covenants in the 501 Worthington Street grant agreement between Friends of the Homeless, Inc. and the City of Springfield, and further that the Defendant, Francis Keough, also fraudulently billed the City of Springfield for the two extra sets of mattresses and frames for the Rhode Island residence.

54.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about April 30, 1999, the Defendant, Francis Keough, caused the general contractor handling the 501 Worthington Street renovation to make a second payment towards the Defendant, Francis Keough's, purchases of building materials on the contractor's account to prevent the suspension of the charge account.

55.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about the Spring of 1999, the Defendant, Francis Keough, permitted an individual to use the Friends of the Homeless, Inc.'s van for approximately two weeks so that the individual could travel back and forth between Springfield, Massachusetts and Charlestown, Rhode Island, in order to build the Defendant, Francis Keough's, Rhodes Island residence.

56.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 24, 1999, the Defendant, Francis Keough, and another individual (unnamed in the Indictment) caused the Springfield Housing Authority to mail check No. 1077 for $1,720.00 to Hazelton Heating, Inc. to pay for a boiler, hot water tank, and baseboard heating components installed in the Defendant, Francis Keough's, Rhodes Island residence.

57.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about June 7, 1999, the Defendant, Francis Keough, mailed a letter requesting funds to the Department of Housing and Community Development in which the Defendant, Francis Keough, certified that the representations, to include the conflict of interest covenants, in the 501 Worthington Street loan agreement between the Friends of the Homeless, Inc. and the Department of Housing and Community Development remained true, complete and correct.

58.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about June 7, 1999, the Defendant, Francis Keough, mailed a letter requesting Community Development Block Grant funds to the City of Springfield's Department of Housing in which the Defendant, Francis Keough, certified that the representations, to include the conflict of interest covenants, in the 501 Worthington Street loan agreement between the Friends of the Homeless, Inc. and the City of Springfield remained true, complete and correct.

59.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about July 13, 1999, while on Friends of the Homeless, Inc.'s time, the Defendant, Francis Keough, assisted an employee of the Hampden County Employment and Training Consortium in drafting a false and fraudulent exculpatory letter to the Springfield Police department to explain why the employee forgave a $90,000.00 loan issued under the City of Springfield's Home Loan Program on May 8, 1997.

60.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about August of 1999, the Defendant, Francis Keough, awarded the first of a series of no-bid service jobs totaling approximately $9,900.00 for electrical work at the Friends of the Homeless, Inc. to an electrical contractor who had permitted the

Defendant, Francis Keough, to order electrical materials for his Rhode Island residence through the contractor's account in order to receive the contractor's discount of fifteen percent on supplies and thirty percent on all light fixtures.

61.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about September 21, 1999, the Defendant, Francis Keough, caused the Friends of the Homeless, Inc. to issue a check for $2,664.60 in funds dedicated to the 501 Worthington Street renovation project to pay for the electrical supplies used at the Defendant, Francis Keough's, Rhodes Island residence and billed through the account of the 501 Worthington street electrical subcontractor.

62.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about October of 1999, the Defendant, Francis Keough, awarded a series of no-bid Friends of the Homeless, Inc. renovation jobs totaling approximately $12,000.00 to a Springfield Housing Authority employee who had served as the Defendant, Francis Keough's, who had served as the Defendant, Francis Keough's, unofficial general contractor on the construction of the defendant, Francis Keough's, Rhode Island residence.

63.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about December 29, 1999, the Defendant, Francis Keough, caused the Friends of the Homeless, Inc. to issue a $287.14 reimbursement check to the Defendant, Francis Keough, for costs related to the purchase of a hydronic heater for the Worthington Street Shelter, when in truth this heater had been installed in the Defendant, Francis Keough's, Rhode Island residence.

64.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that beginning in January of 2000, and thereafter, that the Defendants, Francis Keough and Angel Guzman, caused a Friends of the Homeless, Inc. employee to travel to the Defendant, Francis Keough's, Rhode Island residence and perform work on the Defendant, Francis Keough's, personal residence while on Friends of the Homeless, Inc.'s time.

65.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about January of 2000, the Defendants Francis Keough and Michael Hallahan, agreed to submit false Friends of the Homeless, Inc. time sheets for the Defendant, Michael Hallahan, Paul Sarno, or any other Friends of the Homeless, Inc. employee that inflated the number of hours actually worked.

66.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 24, 2000, the Defendants, Francis Keough, Michael Hallahan and Angel Guzman, caused the City of Springfield to mail a reimbursement check for $13,726.00 for Friends of the Homeless, Inc. Wages that included payment for personal work performed while on Friends of the Homeless, Inc.'s time and hours not worked at Friends of the Homeless, Inc.

67.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that sometime during the summer of 2000, that the Defendant, Francis Keough, had another individual (unnamed in the Indictment) obtain two chainsaws and a wood chipper from the Springfield Housing Authority so that the Defendant, Francis Keough, could have Friends of the Homeless, Inc. employees and Hampden County House of Correction work release inmates clear brush at the Defendant, Francis Keough's, Rhode Island residence.

68.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2000, the Defendant, Francis Keough, arranged for the use of a Springfield School Department Food Services van through a part-time Friends of the Homeless, Inc. intake worker, who worked full-time for the Food Services Department, to transport at least one Friends of the Homeless, Inc. employee and several Hampden County House of Correction work release inmates to the Defendant, Francis Keough's, Rhode Island residence.

69.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2000, at the Defendant, Francis Keough's, direction, at least one Friends of the Homeless, Inc. employee and several Hampden County House of Correction work release inmates traveled to the Defendant, Francis Keough's, Rhode Island residence and cleared brush and trees from the Defendant, Francis Keough's, property while on Friends of the Homeless, Inc.'s time.

70.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2000, at the Defendant, Francis Keough's, direction, a Friends of the Homeless, Inc. employee performed maintenance at 1117-1119 Sumner Avenue, Springfield, MA while on Friends of the Homeless, Inc.'s time.

71.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2000, at the Defendant, Francis Keough's, direction, a Friends of the Homeless, Inc. employee performed maintenance at 24-26 Palmer Avenue, Springfield, MA while on Friends of the Homeless, Inc.'s time.

72.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2000, at the Defendant, Francis Keough's, direction, a Friends of the Homeless, Inc. employee performed maintenance at 53-55 Palmer Avenue, Springfield, MA while on Friends of the Homeless, Inc.'s time.

73.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2000, the Defendant, Francis Keough, caused the Friends of the Homeless, Inc. to order new mattresses for the emergency bed shelter that included mattresses destined for the Defendant, Francis Keough's, Rhode Island residence.

74.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about June 20, 2000, the Defendant, Francis Keough, caused the submission of a false and fraudulent Individual Self-Sufficient Initiative Program application in the name of "Tenant A" (as identified in the Indictment) to the Hampden Hampshire Housing Partnership for a rental unit at 1117 Sumner Avenue, Springfield, MA.

75.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about June 30, 2000, the Defendants, Francis Keough, Michael Hallahan and Angel Guzman, caused the City of Springfield to mail a reimbursement check for $3,121.72 for Friends of the Homeless, Inc. wages that included payment for personal work performed while on Friends of the Homeless, Inc.'s time.

76.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about July 1, 2000, the Defendant, Francis Keough, received via the United States mail the first of a series of checks issued under the Individual Self-Sufficient Initiative Program for rental assistance for "Tenant A" at 1117 Sumner Avenue, Springfield, Massachusetts.

77.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about August 22, 2000, the Defendants, Francis Keough, Michael Hallahan and Angel Guzman, caused the City of Springfield to mail a reimbursement check for $7,722.68 for Friends of the Homeless, Inc. wages that included payment for personal work performed while on Friends of the Homeless, Inc.'s time.

78.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about October 2, 2000, the Defendants, Francis Keough, Michael Hallahan and Angel Guzman, caused the City of Springfield to mail a reimbursement check for $5,807.22 for Friends of the Homeless, Inc. wages that included payment for personal work performed while on Friends of the Homeless, Inc.'s time.

79.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about November 6, 2000, the Defendants, Francis Keough, Michael Hallahan and Angel Guzman, caused the City of Springfield to mail a reimbursement check for $11,288.56 for Friends of the Homeless, Inc. wages that included payment for personal work performed while on Friends of the Homeless, Inc.'s time.

80.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about December 28, 2000, that the Defendant, Francis Keough, had an Friends of the Homeless, Inc. employee create on Friends of the Homeless, Inc. time a fraudulent estimate for the replacement of a boiler that had cracked at 1117-1119 Sumner Avenue, Springfield, Massachusetts.

81.     Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about 2000 or 2001, the Defendant, Francis Keough, caused an

individual (unnamed in the Indictment) to steal two refrigerators from the Springfield Housing Authority that this individual eventually delivered to the Friends of the Homeless, Inc.

82.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about 2000 or 2001, the Defendant, Francis Keough, arranged for the use of a Springfield School Department Food Services van, through a Friends of the Homeless, Inc. part-time intake worker, to transport at least one of the stolen refrigerators to the Defendant, Francis Keough's, Rhode Island residence.

83.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about 2000 or 2001, the Defendant, Angel Guzman, and another Friends of the Homeless, Inc. employee transported one of the stolen Springfield Housing Authority refrigerators in the Springfield School Department Food Services van to the Defendant, Francis Keough's, Rhodes Island residence while on Friends of the Homeless, Inc. time.

84.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about January of 2001, the Defendants, Francis Keough and Michael Hallahan, continued to process false Friends of the Homeless, Inc. time sheets for certain intake workers who did personal work and favors for the benefit of the Defendant, Francis Keough, and others.

85.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about February 12, 2001, the Defendants, Francis Keough and Angel Guzman, caused the submission of a false and fraudulent Individual Self-Sufficiency Initiative Program application in the name of a Tenant (unnamed in the Indictment) to the Hampden Hampshire Housing Partnership for a rental unit at 87 Longhill Street, Springfield, MA.

86.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about April 6, 2001, the Defendant, Francis Keough, caused the submission of a false and fraudulent Individual Self-Sufficiency Initiative Program application in the name of a Tenant (unnamed in the Indictment) to the Hampden Hampshire Housing Partnership for a rental unit at 414 Chestnut Street, Springfield, MA.

87.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 1, 2001, the Defendant, Francis Keough, caused the Hampden Hampshire Housing Partnership to send via the United States mail the first of a series of checks issued under the Individual Self-Sufficiency Initiative Program for rental assistance for a Tenant (unnamed in the Indictment) of 414 Chestnut Street, Springfield, MA.

88.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 1, 2001, the Defendants, Francis Keough and Angel Guzman, caused the Hampden Hampshire Housing Partnership to send via the United

States mail the first of a series of checks issued under the Individual Self-Sufficiency Initiative Program for rental assistance for a Tenant (unnamed in the Indictment) of 87 Longhill Street, Springfield, MA.

89.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 2, 2001, the Defendants, Francis Keough and Angel Guzman, caused the submission of a false and fraudulent Individual Self-Sufficiency Initiative Program application in the name of a Tenant (unnamed in the Indictment) to the Hampden Hampshire Housing Partnership for a rental unit at 24-26 Palmer Avenue, Springfield, MA.

90.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 8, 2001, the Defendant, Francis Keough, fraudulently caused the submission from the Friends of the Homeless, Inc. and elsewhere to the Union Mutual Insurance Company three fraudulent bills totaling $5,450.31 for general contractor, electrical and asbestos removal services that had not been performed to replace the cracked boiler at 1117-1119 Sumner Avenue, Springfield, MA.

91.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 17, 2001, the Defendant, Francis Keough, caused Union Mutual Insurance Company to issue a check for $5,200.31 to reimburse their insured for expenses allegedly incurred by the Defendant, Francis Keough, for the replacement of a cracked boiler at 1117-1119 Sumner Avenue, Springfield, MA.

92.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2001, at the Defendant, Francis Keough's, direction, at least one Friends of the Homeless, Inc. employee and several Hampden County House of Correction work release inmates traveled to the Defendant, Francis Keough's, Rhodes Island residence and cleared brush and trees from the Defendant, Francis Keough's, property while on Friends of the Homeless, Inc.'s time.

93.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2001, at the Defendant, Francis Keough's, direction, a Friends of the Homeless, Inc. employee and several Hampden County House of Correction work release inmates performed lawn maintenance at 1117-1119 Sumner Avenue, Springfield, MA while on Friends of the Homeless, Inc.'s time.

94.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2001, at the Defendant, Francis Keough's, direction, a Friends of the Homeless, Inc. employee and several Hampden County House of Correction work release inmates performed maintenance work at 24-26 Palmer Avenue, Springfield, MA while on Friends of the Homeless, Inc.'s time.

95.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on at least one occasion during the summer of 2001, at the Defendant,

Francis Keough's, direction, a Friends of the Homeless, Inc. employee and several Hampden County House of Correction work release inmates performed maintenance work at 53-55 Palmer Avenue, Springfield, MA while on Friends of the Homeless, Inc.'s time.

96.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about the fall of 2001, on at least one occasion, the Defendant, Francis Keough, caused individuals working at the Friends of the Homeless, Inc. to work phone banks for a candidate for elected office while on Friends of the Homeless, Inc. or City of Springfield time.

97.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about October 18, 2001, the Defendant, Francis Keough, caused the submission of a false and fraudulent Individual Self-Sufficiency Initiative Program application in the name of a Tenant (unnamed in the Indictment) to the Hampden Hampshire Housing Partnership for a rental unit at 24-26 Palmer Avenue, Springfield, MA.

98.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about late October of 2001, the Defendant, Francis Keough, initiated a sexual relationship with a Friends of the Homeless, Inc. "Female Resident A" (as identified in the Indictment), who consented out of fear of being evicted and becoming homeless again.

99.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about December 1, 2001, the Defendant, Francis Keough, received via the United States mail the first of a series of checks issued under the Individual Self-Sufficient Initiative Program for rental assistance for "Tenant E" (as identified in the Indictment) at 24-26 Palmer Avenue, Springfield, Massachusetts.

100.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about December 1, 2001, the Defendant, Francis Keough, received via the United States mail the first of a series of checks issued under the Individual Self-Sufficient Initiative Program for rental assistance for "Tenant F" (as identified in the Indictment) at 24-26 Palmer Avenue, Springfield, Massachusetts.

101.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about December of 2001, the Defendant, Francis Keough, advised the Friends of the Homeless, Inc. "Female Resident A" and Friends of the Homeless, Inc. employees unaware of the ongoing sexual relationship that Friends of the Homeless, Inc. "Female Resident A" did not have to pay rent despite having a Friends of the Homeless, Inc. job.

102.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about January of 2002, the Defendants, Francis Keough and Michael Hallahan, continued to process false Friends of the Homeless, Inc. time sheets for certain intake workers who did personal work and favors for the benefit of the Defendant, Francis Keough, and others.

103.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about the summer of 2002, the Defendant, Angel Guzman, initiated a sexual relationship with a Friends of the Homeless, Inc. "Female Resident B" (as identified in the Indictment), who consented out of fear of being evicted and becoming homeless again and fear for her personal safety.

104.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about the summer of 2002, the Defendant, Francis Keough, engaged in a sexual act with Friends of the Homeless, Inc. "Female Resident B" at 1117 Sumner Avenue, Springfield, Massachusetts, who consented out of fear of being evicted and other repercussions.

105.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about the summer of 2002, the Defendant, Francis Keough, informed Friends of the Homeless, Inc. employees that any cash income received by Friends of the Homeless, Inc. "Female Resident B" did not constitute "income" and should not be considered in calculating Friends of the Homeless, Inc. "Female Resident B's" true rental contributions.

106.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about late September or early October of 2002, at the Defendant, Francis Keough's, direction, the Defendant, Angel Guzman, and a Friends of the Homeless, Inc. employee removed two refrigerators that had been stolen from the Springfield Housing Authority from the Defendant, Francis Keough's, Rhode Island residence and transported them to 24-26 Palmer Avenue, Springfield, MA while on Friends of the Homeless, Inc. time.

107.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on December 16, 2002, the Defendant, Francis Keough, attempted to thwart an investigation of himself by, among other statements, falsely telling a FBI special agent that the heating system at the Defendant, Francis Keough's, Rhode Island residence "wasn't done by anybody with Housing Authority connections."

108.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on April 8, 2003, the Defendant, Francis Keough, attempted to obstruct the grand jury investigation by, among other statements, falsely stating, "Fuckin' Christ no.  What are you crazy?' in response to a FBI special agent's question about the use of Friends of the Homeless, Inc. money for the Defendant, Francis Keough's, Rhode Island property.

109.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on April 29, 2003, the Defendant, Francis Keough, attempted to obstruct the grand jury investigation by, among other statements, falsely stating to a FBI special agent, "Every fucking thing that I ever got out of there, I fucking paid for" in reference to the Defendant, Francis Keough's, Rhode Island residence and asking that his name be

removed from federal grand jury subpoenas.

111.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that beginning in or about the late summer, 2003, the Defendant, Francis Keough, caused the submission of false and fraudulent time sheets to the City of Springfield that included his personal work on the political campaign of an unsuccessful mayoral candidate for the City of Springfield.  Including, but not limited to, any and all statements by Linda Melconian.

112.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that sometime between December 7, 2003 and December 23, 2003, the Defendant, Francis Keough, removed several mattresses and two televisions that had been stolen from the Friends of the Homeless, Inc. from the Defendant, Francis Keough's, Rhode Island residence in order to conceal evidence from federal investigators.

113.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about March, 2004, the Defendant, Francis Keough, met a Friends of the Homeless, Inc. employee at a Friendly's Restaurant in Westfield, Massachusetts and asked the Friends of the Homeless, Inc. employee to testify falsely before the federal grand jury.

114.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 7, 2004, the Defendant, Francis Keough, caused the City of Springfield to mail a reimbursement check for $89,159.86 for Friends of the Homeless, Inc. wages that included payment for personal work performed by the Defendant, Francis Keough, on the political campaign of a City of Springfield mayoral candidate while on Friends of the Homeless, Inc. time.  Including, but not limited to, any and all statements by Linda Melconian.

115.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about July of 2004, at the Defendant, Francis Keough's, direction, a Friends of the Homeless, Inc. employee and several Hampden County work release inmates delivered and spread a load of mulch at the Defendant, Michael Hallahan's, residence at 5 Desrosiers Street, Springfield, MA while on Friends of the Homeless, Inc. time.

116.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about July 29, 2004, the Defendant, Francis Keough, caused the City of Springfield to mail a reimbursement check for $29,600.00 for Friends of the Homeless, Inc. wages that included payment for personal work performed by the Defendant, Francis Keough, while on Friends of the Homeless, Inc. time and hours not worked by the Defendant, Francis Keough.

117.    Copies of all documents reflecting, relating or referring to or otherwise indicating or

evidencing that on or about May 24, 2005, the Defendant, Francis Keough, attempted to influence the testimony of a person identified as "Witness D" in the Indictment, by following "Witness D's" vehicle from a meeting at the Friends of the Homeless, Inc. Onto Interstate 91 and then approaching "Witness D's" vehicle while parked in the breakdown lane of Interstate 91.

118.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about June 14, 2005, the Defendant, Francis Keough, aided by the Defendant, Angel Guzman, attempted to obstruct the grand jury investigation by telling a person identified as "Witness B" in the Indictment, in substance, that "Witness B" should testify before the federal grand jury that "Witness B" was homeless at the time that "Witness B" enrolled in the Individual Self-Sufficiency Initiative Program, and that "Witness B" should not mention the fact that the Defendant, Francis Keough, had tenants living in the basement at 24-26 Palmer Avenue, Springfield, Massachusetts.

119.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that sometime between July 29, 2005 and August 11, 2005, the Defendant, Francis Keough, attempted to influence the testimony of a person identified as "Witness E" in the Indictment by trying to convince "Witness E" to repeat a false, exculpatory story to federal investigators or the federal grand jury to explain away false and fraudulent Friends of the Homeless, Inc. time sheets submitted by the Defendant, Michael Hallahan.

120.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about the following dates, the Defendant, Francis Keough, devised a scheme and artifice to defraud the Friends of the Homeless, Inc., the City of Springfield, the United States Department of Housing and Urban Development and the public  of money and the intangible right to honest services by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United States Postal Service or any private or commercial interstate carrier the following reimbursement checks issued by the City of Springfield and funded by the United States Department of Housing and Urban Development that in part paid for personal work performed by the Defendant, Francis Keough, while on the Friends of the Homeless, Inc.'s time, or hours not worked by the Defendant, Francis Keough, all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud:

| Date | Check Amount |
|------|--------------|
| 09/30/02 | $ 25,864.00 |
| 10/18/02 | $  5,893.44 |
| 01/02/03 | $  9,256.00 |
| 01/02/03 | $  5,669.53 |
| 02/21/03 | $  5,669.03 |
| 03/21/03 | $ 25,692.83 |
| 04/10/03 | $  5,669.53 |
| 05/09/03 | $ 13,296.63 |
| 06/23/03 | $  5,658.28 |
| 07/09/03 | $  4,797.75 |

| 05/07/04 | $ 89,159.86 |
| 07/29/04 | $ 29,600.00 |

121.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about the following dates, the Defendant, Francis Keough, devised a scheme and artifice to defraud the Friends of the Homeless, Inc., the City of Springfield, the United States Department of Housing and Urban Development and the public of money and the intangible right to honest services by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United States Postal Service or any private or commercial interstate carrier the following reimbursement checks issued by the City of Springfield and funded by the United States Department of Housing and Urban Development that in part paid for maintenance supplies purchased from a company headed by the Defendant, Francis Keough's, brother-in-law without a competitive bid process, all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud:

| Date | Check Amount |
|------|--------------|
| 03/29/01 | $ 13,293.62 |
| 03/30/02 | $  6,511.68 |
| 06/12/03 | $  7,810.00 |

122.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about the following dates, the Defendant, Francis Keough, devised a scheme and artifice to defraud the Friends of the Homeless, Inc., the United States Department of Housing and Urban Development and the Hampden Hampshire Housing Partnership of money and the intangible right to honest services by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United States Postal Service or any private or commercial interstate carrier the following checks issued by the Hampden Hampshire Housing Partnership under the Individual Self-Sufficiency Initiative Program all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud:

| Date | Check Amount | Matter |
|------|--------------|--------|
| 05/01/01 | $    475.00 | Rent Check for "Tenant A" |
| 02/01/02 | $    473.00 | Rent Check for "Tenant B" |

123.   Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about the following dates, the Defendants, Francis Keough and Angel Guzman, devised a scheme and artifice to defraud the Friends of the Homeless, Inc., the United States Department of Housing and Urban Development and the Hampden Hampshire Housing Partnership of money and the intangible right to honest services by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United States Postal Service or any private or commercial interstate carrier the following checks issued by the Hampden Hampshire Housing Partnership under the Individual Self-Sufficiency Initiative Program all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud:

| Date | Check Amount | Matter |
|------|------------|--------|
| 10/01/01 | $ 475.00 | Rent Check for "Tenant C" |
| 02/01/02 | $ 475.00 | Rent Check for "Tenant D" |
| 09/01/02 | $ 475.00 | Rent Check for "Tenant E" |
| 10/01/02 | $ 475.00 | Rent Check for "Tenant F" |

124.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 17, 2001, the Defendant, Francis Keough, devised a scheme and artifice to defraud Union Mutual Fire Insurance Company of money by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United States Postal Service or any private or commercial interstate carrier a Union Mutual Fire Insurance Company check made payable to the Defendant, Francis Keough, for $5,200.31 all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud.

125.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about the following dates the Defendants, Francis Keough and Angel Guzman, devised a scheme and artifice to defraud the following mortgage companies of money by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United States Postal Service or any private or commercial interstate carrier the following complete loan closing packages, which contained false and fraudulent loan documents, to the following mortgage companies, all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud:

| Date | Mortgage Company | Loan Closing Package |
|------|-----------------|---------------------|
| 03/08/02 | New Century Mortgage | 24-26 Palmer Ave., Springfield |
| 10/03/03 | Countrywide Home Loans | 24-26 Palmer Ave., Springfield |

126.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about July 19, 2004, the Defendants, Francis Keough and Michael Hallahan, devised a scheme and artifice to defraud Full Spectrum Lending of money by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United States Postal Service or any private or commercial interstate carrier a complete loan closing package, which contained false and fraudulent loan documents, for the purchase of 5 Desrosiers Avenue, Springfield, MA, to Full Spectrum Lending, all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud.

127.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about March 7, 2002, the Defendant, Francis Keough, devised a scheme and artifice to defraud the Friends of the Homeless, Inc., the Springfield Housing Authority, the Commonwealth of Massachusetts and the public of money, property, and the intangible right to honest services by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United

States Postal Service or any private or commercial interstate carrier a Friends of the Homeless, Inc. check that did not include any rental contributions of Friends of the Homeless, Inc. "Female Resident A" for whom the Defendant, Francis Keough, had waived her rental obligations because of past and ongoing sexual relations, all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud.

128.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about December 3, 2002, the Defendants, Francis Keough and Angel Guzman, devised a scheme and artifice to defraud the Friends of the Homeless, Inc., the Springfield Housing Authority, the Commonwealth of Massachusetts and the public of money, property, and the intangible right to honest services by means of false pretenses, representations, promises, and material omissions, and knowingly caused to be delivered by the United States Postal Service or any private or commercial interstate carrier a Friends of the Homeless, Inc. check that did not include any rental contributions of Friends of the Homeless, Inc. "Female Resident B" for whom the Defendant, Francis Keough, had waived her rental obligations because of past and ongoing sexual relations with the Defendants, Francis Keough and Angel Guzman, all for the purpose of executing, and attempting to execute, said scheme and artifice to defraud.

129.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that between on or about April 23, 1999 and December 8, 1999, the Defendant, Francis Keough, did knowingly, willfully, and unlawfully affect and attempt to affect interstate commerce by extortion, in that the Defendant, Francis Keough, unlawfully obtained $29,000.00 from The Ware Group, Inc., which property was not due the Defendant, Francis Keough, and The Ware Group, Inc.'s consent having been induced by wrongful use and threat of use of economic harm and under color of official right.

130.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that from on or about December 16, 2002 through or about April 29, 2003, the Defendant, Francis Keough, did corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of justice by making a series of false statements to a Special Agent of the Federal Bureau of Investigation about how the Defendant, Francis Keough, had paid for the construction of his residence in Charleston, Rhodes Island in order to have his name removed from grand jury subpoenas being issued on behalf of the federal grand jury.

131.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about April 8, 2003, the Defendant, Francis Keough, in a matter within the jurisdiction of the Federal Bureau of Investigation, United States Department of Justice, did knowingly and willfully make a false, fraudulent and fictitious material statement and representation, that is falsely stating to a Special Agent of the Federal Bureau of Investigation in substance that no money from the Friends of the Homeless, Inc. was ever used for the construction of his house in Charleston, Rhodes Island.

132.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about April 29, 2003, the Defendant, Francis Keough, in a matter

within the jurisdiction of the Federal Bureau of Investigation, United States Department of Justice, did knowingly and willfully make a false, fraudulent and fictitious material statement and representation, that is falsely stating to a Special Agent of the Federal Bureau of Investigation in substance that the Defendant, Francis Keough, had paid for everything used for the construction of his house in Charleston, Rhodes Island that he had received from a local building supply company.

133.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that from on or about March 16, 2004 through September 21, 2004, the Defendant, Francis Keough, did corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of justice by causing "Witness A" to testify falsely about personal work performed at the Defendant, Francis Keough's, residence in Charleston, Rhodes Island while on Friends of the Homeless, Inc.'s time and the use of inmates from the Hampden County House of Correction to perform personal work on the Defendant, Francis Keough's, personal and rental residences.

134.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that from on or about March 16, 2004 through September 21, 2004, the Defendant, Francis Keough, did knowingly corruptly persuade and attempt to persuade "Witness A" with the intent to influence the testimony of "Witness A" in a federal grand jury proceeding by telling "Witness A" in substance that "Witness A" should testify that "Witness A" worked at the Defendant, Francis Keough's, residence in Charleston, Rhodes Island while on personal time, and that "Witness A" exercised bad judgment and was at fault for allowing Hampden County House of Corrections inmates to perform personal work.

135.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about late 2004, or early 2005, the Defendant, Francis Keough, did knowingly corruptly persuade and attempt to persuade "Witness A" with the intent to influence the testimony of "Witness A" in an official proceeding by asking "Witness A" to tell the Federal Bureau of Investigation that "Witness A" personally observed the Defendant, Francis Keough, give $30,000.00 in cash to the owner of The Ware Group, Inc.

136.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about June 14, 2005, the Defendant, Francis Keough, did corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of justice by telling "Witness B" in substance to testify falsely about "Witness B's" living situation at the time "Witness B" enrolled in the Individual Self-Sufficiency Initiative Program, and not to mention the fact that the Defendant, Francis Keough, had tenants living in the basement at 24-26 Palmer Avenue, Springfield, Massachusetts.

137.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about June 14, 2005, the Defendant, Francis Keough, did knowingly corruptly persuade and attempt to persuade "Witness B" with the intent to influence the testimony of "Witness B" in a federal grand jury proceeding by telling "Witness B" in

substance that "Witness B" should testify that "Witness B" was homeless at the time "Witness B" enrolled in the Individual Self-Sufficiency Initiative Program, and that "Witness B" should not mention the fact that the Defendant, Francis Keough, had tenants living in the basement at 24-26 Palmer Avenue, Springfield, Massachusetts.

138.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about June of 2005, the Defendant, Francis Keough, did corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of justice by telling "Witness C" in substance that he protects his friends, that everyone should get on the same page, and that if "Witness C" wanted to say that "Witness C" was homeless at the time "Witness C" enrolled in the Individual Self-Sufficiency Initiative Program, that the Defendant, Francis Keough, would back up "Witness C."

139.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that in or about June of 2005, the Defendant, Francis Keough, did knowingly corruptly persuade and attempt to persuade "Witness C" with the intent to influence the testimony of "Witness C" in a federal grand jury proceeding by telling "Witness C" in substance that he protects his friends, that everyone should get on the same page, and that if "Witness C" wanted to say that "Witness C" was homeless at the time "Witness C" enrolled in the Individual Self-Sufficiency Initiative Program, that the Defendant, Francis Keough, would back up "Witness C."

130.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 24, 2005, the Defendant, Francis Keough, did corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of justice by following "Witness D" in his vehicle and eventually causing "Witness D" to stop in the breakdown lane of Interstate 91 in an attempt to influence "Witness D's" testimony before the federal grand jury regarding her recollection seeing the Defendant, Francis Keough, give cash to the owner of The Ware Group, Inc.

141.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 24, 2005, the Defendant, Francis Keough, did knowingly corruptly persuade and attempt to persuade "Witness D" with the intent to influence the testimony of "Witness D" in a federal grand jury proceeding by following "Witness D" in his vehicle and eventually causing "Witness D" to stop in the breakdown lane of Interstate 91 in an attempt to "remind" "Witness D" that "Witness D" had seen the Defendant, Francis Keough, give cash to the owner of The Ware Group, Inc., a fact that "Witness D" disputed.

142.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that sometime between July 29, 2005 and August 11, 2005, the Defendant, Francis Keough, did endeavor to obstruct and impede the due administration of justice by attempting to influence "Witness E" to state that hours not worked, but fraudulently recorded on Friends of the Homeless, Inc. time sheets for certain Friends of the Homeless, Inc. Intake workers had actually been worked by the Friends of the Homeless, Inc. intake workers on other, unrecorded occasions.

143.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that sometime between July 29, 2005 and August 11, 2005, the Defendant, Francis Keough, did knowingly attempt to corruptly persuade "Witness E" with the intent to influence the testimony of "Witness E" in a federal grand jury proceeding by attempting to influence "Witness E" to state that hours not worked, but fraudulently recorded on Friends of the Homeless, Inc. time sheets for certain Friends of the Homeless, Inc. Intake workers had actually been worked by the Friends of the Homeless, Inc. intake workers on other, unrecorded occasions.

144.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about April 22, 2003, the Defendant, Francis Keough, while under oath and testifying in a proceeding before a federal grand jury, knowingly made a false material declaration, that is to say that in response to questions with respect to Friends of the Homeless, Inc. employee time sheets, the Defendant, Francis Keough, testified:

> Q:    It is accurate that all of the time sheets that you have produced are true and correct?
>
> A:    <u>Yes.  To the best of my knowledge.</u>

and that the aforesaid underscored testimony of the Defendant, Francis Keough, as he then and there well knew and believed, was false in that the Defendant, Francis Keough, knew that he produced Friends of the Homeless, Inc. time sheets for himself and certain Friends of the Homeless, Inc. intake workers that were not true and correct.

145.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about July 29, 2005, and August 11, 2005, the Defendant, Francis Keough, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, that is, the order issued by the Honorable Kenneth P. Neiman, United States Magistrate Judge on July 29, 2005, in the District of Massachusetts in the case of <u>United States v. Francis G. Keough, III</u>, prohibiting the Defendant, Francis Keough, from having contact with any witnesses, by having contact with witnesses and potential witnesses in the above-captioned matter in violation of the Court's order.

146.    Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about the following dates, the Defendant, Francis Keough, did willfully make and subscribe a U.S. Individual Income Tax Return Form 1040, for the following calendar years, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service Center which said income tax returns the Defendant, Francis Keough, did not believe to be true and correct as to every material matter in that said returns reported the following total income figures on Line 22, where the Defendant, Francis Keough, then and there knew and believed the said returns did not report all of his total income, and his total income was greater than the amount reported on Line 22:

| Calendar Year | Total Income |
|---|---|
| 1999 | $ 72,857.00 |
| 2000 | $ 125,215.00 |
| 2001 | $ 128,208.00 |
| 2002 | $ 237,709.00 |
| 2003 | $ 111,065.00 |

147.    A listing, including name, last known address, and any other identifying information of all inmates at the Hampden County House of Correction, present or former, that are alleged to have acted at the direction of Mr. Keough, whether by him personally or through an agent, to perform acts on private residences, and private businesses in violation of Hampden County House of Correction policy.

Thank you for your prompt attention to this matter.

Sincerely,

 /s/ Daniel D. Kelly
Daniel D. Kelly, Esq.,
101 State Street, Suite 715
Springfield, MA 01103
Phone (413) 733-0770
Fax (413) 733-1245
BBO No.:  634648

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 6, 2006.


/s/ Daniel D. Kelly
Daniel D. Kelly