**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES

vs.                                              Criminal No. 04-30032-MAP

FRANK KEOUGH, et al.,
       Defendants

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT'S MOTION TO DISMISS**
**COUNT I OF THE SECOND SUPERCEDING INDICTMENT**
**(DUPLICITY)**

The Defendant has moved for dismissal of Count I of the Second Superseding Indictment, which charges the Defendants, Francis Keough, Angel Guzman, and Michael Hallahan, with Conspiracy to Commit Mail Fraud and Theft of Honest Services in violation of 18 U.S.C. § 371, 18 U.S.C. § 1341 and 18 U.S.C. § 1346.  The grounds for Defendant's Motion to Dismiss is that Count I of the Indictment in effect charges multiple conspiracies in single count, and hence is impermissibly "duplicitous".

When ruling on a Motion to Dismiss an Indictment (or Counts thereof), the Court's review is limited to "the well-pleaded facts in the indictment itself."  <u>United States v. Nippon Paper Industries Co., Ltd.</u>, 109 F.3d 1 (1st Cir. (Mass.)1997), citing, <u>United States v. National Dairy Prods. Corp.</u>, 372 U.S. 29, 33 n. 2 (1963).  A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather is directed only to the question of the validity of the indictment on its face.  <u>United States v. Winer</u>, 323 F.Supp. 604 (E.D.Pa.1971), citing, <u>United States v. Sampson</u>, 371 U.S. 75 (1962).  Hence, when ruling on a motion to dismiss an indictment, the allegations contained therein are assumed to be true.  <u>United States v. Murphy</u>, 762 F.2d at 1154;  <u>United States v. Buckley</u>, 689 F.2d 893, 897 (9th Cir.1982).

## **STATEMENT OF FACTS**

With regard to the facts allegations that are the subject of this Motion to Dismiss, Count I of the Second Superceding Indictment in effect charges at least ten (10) separate conspiracies in a single Count. Examination of the factual allegations contained in Count I provides that:

The **First** conspiracy alleged in Count I of the Second Superceding Indictment is that the Defendants Francis Keough, Angel Guzman, Michael Hallahan and an unindicted co-conspirator, conspired to commit fraud and theft of goods and services from their employer, Friends of the Homeless, Inc. (hereinafter referred to as the "FOH"), for the benefit of the Defendant, Francis Keough's, Rhodes Island residence (hereinafter referred to as the "Rhodes Island conspiracy") (¶'s 30, 31, 32, 33, 34, 35, 36, 40, 41, 42, 43, 44, 47, 48, 49, 53, 72, 86).

The **Second** conspiracy alleged in Count I of the Second Superceding Indictment is that at Keough's direction, at various times FOH employees performed work at his properties at 1117-1119 Sumner Avenue, Springfield, 24-26 Palmer Avenue, Springfield, and 53-55 Palmer Avenue, Springfield while on FOH time (hereinafter referred to as the "Free Maintenance conspiracy"). (¶'s 50, 51, 52, 73, 74, 75). Although Count I of the indictment alleges that at one time the Defendant, Keough, temporarily & fraudulently transferred his property at 24-26 Palmer Avenue to the Defendant, Guzman:

- a) there are no allegations in Count I as to what possible manner the Defendant, Hallahan, was part of the conspiracy regarding maintenance work performed at Keough's Springfield properties; and

- b) there are no allegations in Count I as to what possible manner the Defendant, Guzman, was part of or even aware of the conspiracy regarding maintenance work performed at Keough's Springfield properties at 1117-1119 Sumner Avenue, Springfield, and 53-55 Palmer Avenue, Springfield ; and

- c) there are no allegations in Count I that the Defendant, Guzman, had any involvement in or even that Guzman was aware that Keough had caused an FOH employee to perform maintenance work to occur at the 24-26 Palmer Avenue

property while on FOH time.

The **Third** conspiracy alleged in Count I of the Second Superceding Indictment is that the Defendants Keough and Guzman conspired to cause the submission of false and fraudulent ISSI Program applications in the name of various tenants in order to fraudulently obtain rental assistance checks (hereinafter referred to as the "ISSI conspiracy"). (¶'s 54, 56, 65, 66, 67, 68, 69, 77, 79, 80). There are no allegations in Count I as to what possible manner the Defendant, Hallahan, was part of or even aware of the conspiracy regarding fraudulently obtaining rental assistance checks from the ISSI Program.

The **Fourth** conspiracy alleged in Count I of the Second Superceding Indictment is that the Defendants Francis Keough, Angel Guzman, and Michael Hallahan conspired to commit "time theft" by obtaining reimbursement checks for FOH wages that included payment for personal work performed while on FOH time (hereinafter referred to as the "Time Theft conspiracy"). (¶'s 39, 45, 46, 55, 57, 58, 59, 64, 82, 90, 95).

The **Fifth** conspiracy alleged in Count I of the Second Superceding Indictment is that the Defendant Keough conspired to submit a false insurance claim for a cracked boiler for his 1117-1119 Sumner Avenue, Springfield by causing an FOH employee to create a fraudulent estimate for replacement while on FOH time. (Hereinafter referred to as the "Cracked Boiler conspiracy"). (¶'s 60, 70, 71). There are no allegations in Count I as to what possible manner the Defendants Guzman and Hallahan were part of or even aware of the conspiracy regarding the submission of this false insurance claim for the cracked boiler at 1117-1119 Sumner Avenue, Springfield.

The **Sixth** conspiracy alleged in Count I of the Second Superceding Indictment is that the Defendant Keough conspired to cause an unindicted co-conspirator to steal two refrigerators from the Springfield Housing Authority. (Hereinafter referred to as the "Stolen Refrigerator conspiracy"). (¶'s 61, 62, 63). Although it is alleged that the Defendant Guzman transported

one of the refrigerators to Keough's Rhodes Island residence while on FOH time (which is an overt act towards the "Rhodes Island Conspiracy"), there are no allegations whatsoever that the Defendant Guzman had any knowledge that the refrigerator was stolen or participated in any manner or means in the conspiracy to steal said refrigerators, or that the Defendant Hallahan had any knowledge or participation in the conspiracy to steal said refrigerators from the Springfield Housing Authority.

The **Seventh** conspiracy alleged in Count I of the Second Superceding Indictment is that Keough conspired to cause FOH employees to perform campaign work while on FOH time. (Hereinafter referred to as the "Election conspiracy"). (¶'s 76, 90, 93). There are no allegations in Count I as to what possible manner the Defendants Guzman and Hallahan were part of or even aware of the conspiracy regarding FOH employees performing campaign work while on FOH time.

The **Eighth** conspiracy alleged in Count I of the Second Superceding Indictment is that in exchange for sexual relations by certain FOH female residents to the Defendants Keough and Guzman, said residents did not have to pay rent. (Hereinafter referred to as the "Sexual Relations conspiracy"). (¶'s 78, 81, 83, 84, 85). There are no allegations in Count I as to what possible manner the Defendant Hallahan was part of or even aware of the sexual relations conspiracy.

The **Ninth** conspiracy alleged in Count I of the Second Superceding Indictment is that the Defendants Keough and Hallahan conspired to cause a FOH and several Hampden County work release inmates to deliver and spread mulch at the Defendant, Hallahan's, residence while on FOH time. (Hereinafter referred to as the "Mulch conspiracy"). (¶'s 94). There are no allegations in Count I as to what possible manner the Defendant Guzman was part of or even aware of the Mulch conspiracy.

The **Tenth** conspiracy alleged in Count I of the Second Superceding Indictment is that

the Defendant Keough conspired to obstruction the investigation of himself. (Hereinafter the "Obstruction conspiracy"). (¶'s 87, 88, 89, 91, 92, 96, 97, 98). Although it is alleged that on one occasion in June of 2005, the Defendant Guzman "aided" Keough with regard to "Witness B" (¶ 97), this falls short of an alleged "conspiracy," and there are no allegations in Count I as to what possible manner the Defendant Hallahan was part of or even aware of the Obstruction conspiracy.

Therefore, examination of the factual paragraphs contained in Count I establish that there were numerous conspiracies alleged therein, involving different parties, different goals, different times, different conduct, and separate agreements. As the discussion below shall establish, had there only been two conspiracies alleged in Count I, much less than the ten (10) existing here, dismissal of Count I of the Second Superceding Indictment is required.

## DISCUSSION

An Indictment is duplicitous if it alleges more than one offense in a single count. Gerberding v. United States, 471 F.2d 55 (8th Cir. 1973). The problems created by a duplicitous indictment include, as described by one appellate court:

> The vices of duplicity arises from breaches of the defendant's Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count could be obtained without unanimous verdict as to each of the offenses contained in the count... A duplicitous indictment also could eviscerate the defendant's Fifth Amendment protection against double jeopardy, because of a lack of clarity concerning the offense for which he is charged or convicted.

United States v. Aguilar, 756 F.2d 1418, 1420 n. 2 (9th Cir. 1985).

An indictment may not charge multiple conspiracies in single count, since a jury verdict on any count that charges two separate offenses is ambiguous, and counts charging two offenses do not reveal whether the grand jury intended to charge both offenses or whether it would have

charged either had it been aware that offenses were distinct, and the problem is particularly acute when multiple offenses charged are conspiracies, because grand jury may have indicted one defendant on basis of evidence admissible only against other defendants. United States v. Cryan, 490 F.Supp. 1234, 1239 (D.N.J.1980), affirmed without opinion, 636 F. 2d 1211 (3rd Cir., 1980); United States v. Martinez-Gonzales, 89 F.Supp. 62, 63 (D.C.Cal.1950). In charging a single conspiracy, and being permitted to present evidence as though there were a single conspiracy, the government/grand jury, "confuse(s) the common purpose of a single enterprise with several, though similar, purposes of numerous separate adventures of like character." Kotteakos v. United States, 328 U.S. 750, 769 (1946); United States v. Jackson, 696 F. 2d 578, 583 (8th Cir., 1982) cert. denied 103 S. Ct. 1531 (1983).

The rationale for these principles is two-fold. First, a jury verdict on any count which charges two separate offenses is ambiguous: it does not reveal whether the jury considered and reached a verdict on each offense charged. See, e.g., United States v. Starks, 515 F.2d 112, 116-17 (3rd Cir. 1975). Second, a count charging two offenses does not reveal whether the grand jury intended to charge both offenses, or whether it would have charged either had it been aware that the offenses were distinct. This problem is particularly acute when the multiple offenses charged are conspiracies, because the grand jury may have indicted one defendant on the basis of evidence admissible only against other defendants. See, e.g., Kotteakos v. United States, supra, 328 U.S. at 769-70.

In the present case, Count I of the Second Superceding Indictment charges one large conspiracy when in fact review of the factual allegations therein establishes several separate conspiracies. The conspiracies alleged in Count I are as varied as the "Sexual Relations conspiracy," to the Rhodes Island conspiracy," to the "Election Conspiracy," to the "ISSI conspiracy," to the "Cracked Boiler conspiracy," etc. It is improper for the Government to frame a single conspiracy charge when multiple conspiracies are involved. Kotteakos v. United States,

328 U.S. 750 (1946); United States v. Kenny, 462 F.2d 1205, 1216 (3rd Cir.), cert. denied, 409 U.S. 914 (1972); United States v. Rosenblatt, 554 F.2d 36, 39 (2d Cir.1977); United States v. Cryan, 490 F.Supp. 1234, 1239 (D.N.J.1980), aff'd without opinion, 636 F. 2d 1211 (3rd Cir., 1980).

In order for there to be a single conspiracy, the factual allegations contained in Count I of the Second Superceding Indictment would have to establish that "each conspirator had the specific intent to further the common unlawful objective." United States v. Tarantino, 846 F.2d 1384, 1392 (D.C.Cir.1988). In ascertaining whether there are separate conspiracies or one overall conspiracy, the Court considers such factors as the commonality vel non of the nature, motive, design, implementation, and logistics of the illegal activities as well as the scope of coconspirator involvement. United States v. Randazzo, 80 F.3d 623, 629 (1st Cir.1996) (where four conspiracies each had a different specific purpose, each involved different conduct, it was proper for the indictment to charge four separate conspiracies rather than one overreaching conspiracy). The essential element of a conspiracy is a mutual understanding to try to accomplish a "common and unlawful plan." "The 'essence' of a conspiracy is an agreement to commit a crime." United States v. Mena-Robles, 4 F.3d, 1026, 1031 (1st Cir. 1993).

As provided above, there are no factual allegations whatsoever that Hallahan had the specific intent to further such unlawful objectives as the Sexual Relations conspiracy, the ISSI conspiracy or the Obstruction conspiracy. Likewise, there are no factual allegations whatsoever that Guzman had the specific intent to further such unlawful objectives as the Cracked Boiler conspiracy, the Election conspiracy, or the Mulch conspiracy. Rather, the factual allegations establish different combinations of defendants with different motives and objectives depending on the particular conspiracy involved. Id. Hence, Count I contains multiple conspiracies, mandating dismissal. Kotteakos v. United States, 328 U.S. 750 (1946); United States v. Rosenblatt, 554 F.2d 36 (2d Cir.1977); United States v. Cryan, 490 F.Supp. 1234 (D.N.J.1980),

affirmed without opinion, 636 F. 2d 1211 (3rd Cir., 1980).

The United States Supreme Court's decision in Kotteakos v. United States, 328 U.S. 750 (1946) is almost exactly on point. In Kotteakos, the indictment charged multiple defendants with one overall conspiracy to obtain F.H.A. loans through fraudulent misrepresentations. At the trial, the proof established not one, but, eight separate conspiracies with similar illegal objectives and methods of execution. At the center of the separate conspiracies was a single man named Brown who directed each individual undertaking. 328 U.S. at 753. None of the other defendants, however, had knowledge of, participated in, or had any interest in the success of, the other conspiracies. Id. at 754. The Supreme Court characterized the purported conspiracy as a "wheel," with Brown at the "hub" and the other defendants as the "spokes," but observed that because of the lack of connection between the spokes, the wheel lacked a rim. Id. at 755. Accordingly, defendants were not properly charged as confederates in a single overall conspiracy, and the Court held that the variance between the proof at trial, which established multiple conspiracies, and the single conspiracy alleged in the indictment was sufficiently material and prejudicial to defendants' substantial rights to require reversal.

More specifically, the Kotteakos Court stated:

> Here, toleration went too far. We do not think that either Congress, when it enacted §259, or this Court, when deciding the Berger case, intended to authorize the Government to string together, for common trial, eight or more separate and distinct crimes, co-conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all... But if the practice here followed were to stand, we see nothing to prevent its extension to a dozen, a score or more conspiracies and at the same time to score of men involved, if at all, only separate in them. The danger of transference of guilt from one another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place.

Id., 343 U.S. supra at 773- 774.

The rationale behind the Kotteakos decision is singularly straightforward: if a defendant is convicted on a count charging him with separate conspiracies, it will be impossible to determine, for double jeopardy and sentencing purposes and for the purpose of appellate review, whether the jury found the defendant guilty of one conspiracy or both. United States v. Starks, 515 F.2d 112, 116 (C.A.3, 1975); United States v. Cryan, 490 F.Supp. 1234, 1239 (D.N.J.1980), affirmed without opinion, 636 F. 2d 1211 (3rd Cir., 1980). A Count charging two or more conspiracies raises questions about the grand jury proceedings giving rise to the indictment, viz., whether the grand jury intended to charge multiple conspiracies, whether it would have charged any conspiracy at all had it been aware that the offenses were distinct, and whether the grand jury may have indicted a defendant on the basis of evidence admissible only against other defendants. United States v. Cryan, supra, at 1239. Accordingly, where a single count of an indictment on its face charges multiple conspiracies, considerations of fairness and prudence require that the count be dismissed. United States v. Cryan, 490 F.Supp. 1234, 1239 (D.N.J.1980), affirmed without opinion, 636 F. 2d 1211 (3rd Cir., 1980); United States v. Martinez-Gonzales, 89 F.Supp. 62, 63 (D.C.Cal.1950).

The United States Supreme Court has repeatedly warned against "attempts to broaden the already pervasive and wide sweeping nets of conspiracy prosecutions." Grunewald v. United States, 353 U.S. 391, 404 (1957). The instant conspiracy count is a form of "wheel" conspiracy because it purports to charge a single conspiracy due to the presence of one common participant, viz. Francis Keough. With respect to the type of conspiracy attempted to be charged here, it has become an axiom of conspiracy law that for a wheel to exist, those people who form the wheel "spokes" must have done something in furtherance of a single illegal enterprise. See, e.g., Blumenthal v. United States, 332 U.S. 539, 556-557 (1947). Otherwise, the conspiracy lacks the rim of the wheel to enclose the spokes. Kotteakos v. United States, 328 U.S. 750, 755 (1946). Here, the factual allegations in the indictment not only failed to establish a single over-riding

agreement among the conspirators, but also fails to allege any concert of action that would provide such a rim. The factual allegations set forth therein did not establish that Hallahan had the specific intent to further such unlawful objectives as the Sexual Relations conspiracy, the ISSI conspiracy or the Obstruction conspiracy. Likewise, there are no factual allegations whatsoever that Guzman had the specific intent to further such unlawful objectives as the Cracked Boiler conspiracy, the Election conspiracy, or the Mulch conspiracy. As with Kotteakos, such a "wheel" simply will not roll.

Count I of the Second Superceding Indictment fails to draw the named co-defendants together in a single, overall, comprehensive plan. Moreover, examination of the factual allegations contained in Count I established several separate and distinct enterprises. There can be no other conclusion but that Count One impermissibly was duplicitous for charging several conspiracies into one Count. Had there only been two such conspiracies, dismissal would be required in this case.

This issue was thoroughly analyzed in United States v. Cryan, 490 F.Supp. 1234 (D.N.J. 1980), affirmed without opinion, 636 F. 2d 1211 (3rd Cir., 1980). In Cryan, the grand jury erroneously incorporated multiple conspiracies into a single count. The Court in Cryan found that a conspiracy count which charges two conspiracies as one has no vitality. The indictment in Cryan was properly dismissed. The Cryan Court stated:

> An indictment may not charge multiple conspiracies in a single count...the rational for this principle is two-fold. First, a jury verdict on any count which charges two separate offense is ambiguous: it does not reveal whether the jury considered and reached a verdict on each offense charged...second a count charging two offenses not does reveal whether the grand jury intended to charge either not had it been aware that the offense were distinct. This problem is particularly acute when the multiple offenses charged are conspiracies, because the grand jury may have indicted one defendant on the basis of evidence admissible only against other defendants.

Id. at 1239.

Review of Count I of the Second Superceding Indictment provides that the Court has no just option other than to dismiss the conspiracy count. The Court may identify the flaws in the current indictment but correcting those flaws is beyond the Court's power. An indictment may not be amended, changed or altered in any material respect except by resubmission to the grand jury.[1] The Court can neither act for a grand jury, nor speculate whether a grand jury would have indicted the named defendants had it realized that the indictment as written was improper. To do otherwise would be to permit an amendment to the indictment in violation of the principles set forth in Ex parte Bain, 121 U.S. 1, 7 S. Ct. 781 (1887) and its progeny. See, e.g., Russell v. United States, 369 U.S. 749 (1962); Stircme v. United States, 361 U.S. 212 (1960); United States v. Milestone, 626 F. 2d 264 (3rd Cir., 1980); United States v. De Cavalcante, 440 F. 2d 1264 (3rd Cir. 1971). The premise of these cases is that the indictment under which an individual is charged is initially based upon the decision of the grand jury who has heard evidence and made a determination based thereon as to what charges should be brought. It should remain the province of the grand jury whether the evidence presented by the government warrants charges on each and every separate conspiracy. There is simply no way of knowing upon which conspiracies, if any, the grand jury would have indicted if the evidence had been presented separately, rather than cumulatively, as to each conspiracy. It is not, nor should it be, the province of the Court or prosecutor to second guess the actions of the grand jury. To permit an amendment to the indictment to conform it to the evidence at the whim of the prosecutor or court would be to denigrate their role. See, e.g., United States v. Cryan, 490 F.Supp. 1234, 1239 (D.N.J.1980), affirmed without opinion, 636 F. 2d 1211 (3rd Cir., 1980); United States v. Martinez-Gonzales,

---

[1] It is important to note that the Government cannot allege that the Defendant in this case should move for a Bill of Particulars. This argument is specious, since it has long been settled law that an invalid indictment cannot be cured by a Bill of Particulars. United States v. Murphy, supra., citing, Russell v. United States, 369 U.S. at 770, 82 S.Ct. at

89 F.Supp. 62, 63 (D.C.Cal.1950).

## CONCLUSION

Count I of the Second Superceding Indictment impermissibly contains multiple offenses in a single Count. As provided by Kotteakos v. United States, 328 U.S. 750, 755 (1946) and its progeny, an indictment may not charge multiple conspiracies in single count. Accordingly, because it cannot be determined which, if any, of the conspiracies contained in Count I the Grand Jury would return an indictment (the province of the Grand Jury), Count I must be dismissed.

By all of the above, the Defendant's Motion to Dismiss Count I of the Second Superceding Indictment must be allowed.

        THE DEFENDANT,
        FRANK KEOUGH


        By: /s/ Daniel D. Kelly_____
           Daniel D. Kelly, Esq.
           101 State Street
           Suite 715
           Springfield, MA 01103
           Tel.: (413) 733-0770
           Fax:  (413) 733-1245


## CERTIFICATE OF SERVICE

I, Dan Kelly, Esq., hereby certify that I caused the foregoing document to be served upon the United States Attorney's Office at 1500 Main Street, Springfield, MA, by electronic service this 27thday of September, 2006.

        /s/  Daniel D. Kelly_____
        Daniel D. Kelly, Esq.
        101 State Street
        Suite 715

---

1050; C. Wright, 1 Federal Practice and Procedure § 129 (1982).

Springfield, MA 01103
Tel.: (413) 733-0770
Fax:  (413) 733-1245