```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,          )  CR-N-04-30032-MAP
                                   )
              Plaintiff,           )
                                   )
        vs.                        )
                                   )
FRANCIS G. KEOUGH, et al.,         )
                                   )
              Defendants.          )
```

**GOVERNMENT'S RESPONSE TO DEFENDANT KEOUGH'S
MOTION TO DISMISS COUNT ONE OF THE SECOND SUPERSEDING INDICTMENT
(DUPLICITY)**

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Steven H. Breslow, Assistant United States Attorney, hereby files this response to defendant Francis G. Keough's Motion To Dismiss Count One Of The Second Superseding Indictment (Duplicity) (Docket No. 125).

Keough moves to dismiss Count One on duplicity grounds, arguing that it impermissibly charges as a single conspiracy what should have been charged as multiple conspiracies. As demonstrated below, Keough's arguments are both procedurally premature and substantively without merit.

I.  Background

  A.  The Government's Indictment

Keough is currently charged in a fifty-count second superseding indictment (the "Indictment") charging him with conspiracy to commit mail fraud, substantive mail fraud, extortion, obstruction of justice, making false statements, witness tampering, perjury,

1

criminal contempt, and tax fraud, all in connection with his role as Executive Director of FOH.

Count One charges Keough, along with his co-defendants Angel Guzman and Michael Hallahan, with conspiracy to commit mail fraud. Keough had promoted Guzman and Hallahan to supervisory roles at FOH, with Guzman serving as Keough's Operations Manager and Hallahan serving as Keough's Intake Supervisor. In particular, Hallahan was responsible for ensuring that all of FOH's intake workers' timesheets were true and accurate. Indictment, ¶¶ 10-11.

Count One charges Keough, Guzman, and Hallahan with devising a scheme to defraud FOH, its governmental funding sources (collectively, the "governmental agencies"), and the public of money and the intangible right to the defendants' honest services, and then causing various invoices and checks to be mailed in furtherance of the scheme. Indictment, ¶ 16.

The objects of the charged conspiracy include: to fraudulently obtain money, resources, and the intangible right to honest services from FOH and the governmental agencies; to conceal this fraud through the submission of false documents to FOH and the governmental agencies in order to obtain reimbursement for personal expenses; and to obstruct the federal grand jury investigation by concealing and attempting to conceal evidence and to tamper with witnesses. Indictment, ¶¶ 17-19.

The methods and means of the conspiracy include the following: Keough's appointment of conflicted FOH board members who exercised

virtually no oversight over his operation of FOH; Keough's procurement of goods and services for FOH from friends, family, and associates, all without any competitive bids; Keough's and Guzman's recruitment of FOH residents and work release inmates to perform personal work for Keough in exchange for certain benefits at FOH; and the submission by Keough, Guzman, and Hallahan of fraudulent FOH timesheets which caused FOH to seek reimbursement from the governmental agencies for work that they did not do at FOH.  Lastly, as reward for their involvement in the scheme to defraud, Keough permitted Guzman and Hallahan to receive pay for hours not worked and referred them to an unindicted co-conspirator who processed fraudulent bank loans for them.  Indictment, ¶¶ 20-24.

The Indictment details 73 different overt acts committed by the defendants in furtherance of this conspiracy.  Indictment ¶¶ 25-98.  These acts included acts of board-stacking (e.g., ¶¶ 25); diversion of goods, services, labor, or money from FOH and the governmental agencies to Keough's residences in Springfield, MA and Charlestown, Rhode Island, Hallahan's Springfield, MA residence, or other purposes (e.g., ¶¶ 31, 32, 33, 35, 41, 43, 44, 47-53, 60, 61-63, 70-75, 76, 78, 81, 83-85, 86, 94); the falsification of timesheets to permit FOH employees to receive payment for time not worked, which was often spent providing personal services to Keough (e.g., ¶¶ 45, 46, 55, 57-59, 64, 82, 90, 93, 95); the corrupt manipulation of FOH's contracting process for the personal benefit of Keough (e.g., ¶¶ 28-30, 33-34, 37-38, 40, 42); and the submission of false homeless program paperwork for the personal benefit of Keough (e.g.,

54, 65-69, 77, 79, 80); and the concealment of the conspiracy from the ensuing investigation (e.g., ¶¶ 87-89, 91, 92, 96, 97 and 98).

## II. Count One Is Not Duplicitous

### A. Principles of Law

"Duplicity is the joining in a single count of two or more distinct and separate offenses." United States v. Martinez Canas, 595 F.2d 73, 78 (1st Cir. 1979). "[T]he prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense." United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995).

The doctrine of duplicity has little application to conspiracy counts where a single agreement may encompass multiple illegal objectives. It is well-settled that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'" Braverman v. United States, 317 U.S. 49, 54 (1942) (quotation omitted). See also United States v. Wood, 57 F.3d 913, 919-20 (10th Cir. 1995) (because a defendant "is subject to only one punishment for committing a single conspiracy offense, the fact that the conspiracy alleged an agreement to commit multiplicitous offenses does not render the conspiracy count itself multiplicitous").

### B. Keough's Duplicity Challenge is Premature

The First Circuit repeatedly has held that whether a defendant has participated in a single conspiracy or in multiple conspiracies

4

is a question of fact to be resolved by the jury at trial.  E.g., United States v. LiCausi, 167 F.3d 36, 45 (1st Cir. 1999); United States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir. 1989); United States v. Drougas, 748 F.2d 8, 17 (1st Cir. 1984).

As a result, where an indictment on its face charges only one conspiracy, courts generally have rejected pretrial duplicity challenges to the conspiracy count as premature.  Instead, courts have held that the issue should be decided, in the first instance, by the jury; that any duplicity concerns remaining at the close of trial can be addressed through appropriate jury instructions; and that, in any event, the issue cannot properly be considered until the full development of the relevant factual record at trial. United States v. Cisneros, 26 F.Supp.2d 24, 27 (D.D.C. 1998) (premature to consider defendant's pretrial duplicity challenge to conspiracy count; existence of single versus multiple conspiracies is primarily a fact question for the jury); United States v. Gall, 1996 WL 684404 at *2 (D. Conn. 1996) (motions that ask the court to resolve duplicity issues before trial "have routinely been rejected as premature"); United States v. Billmyer, 1995 WL 54471 at *3 (D.N.H. 1995) (not appropriate to address defendant's duplicity challenge to conspiracy count on pretrial motion; issue is often incapable of resolution until after the jury verdict); United States v. Burger, 773 F. Supp. 1430, 1435 (D. Kan. 1991) (same); see also United States v. Pena-Gonzalez, 62 F.Supp.2d 366, 371-72 (D.P.R. 1999); United States v. Nattier, 127 F.3d 655, 657-58 (8th Cir. 1997) (duplicity concerns remaining at end of trial can be handled

through jury instructions); <u>United States v. Levine</u>, 750 F. Supp. 1433, 1438 (D. Colo. 1990) (same).

All of these considerations apply here and compel the denial of Keough's motion to dismiss Count One. As described above, on its face, the Indictment charges a single conspiracy. Although the scope of the conspiracy is alleged to have encompassed the commission of multiple criminal offenses, the indictment charges that all of the offenses arose out of and related to the operation and activities of a single criminal scheme – the corrupt operation of FOH by Keough, who served as its Executive Director, and by Guzman and Hallahan, who were Keough's hand-picked supervisors, to defraud FOH and its funding sources.

To the extent that Keough wishes, following trial, to assert the existence of a variance between the allegations of the Indictment and the proof at trial – i.e., he believes that the evidence supports a finding of multiple conspiracies rather than a single conspiracy -- the issue can be addressed at that time, either through appropriate jury instructions or through post-trial motions. Keough's current challenge to Count One, however, is premature and should be rejected as such.

C. <u>Keough's Duplicity Challenge Is Substantively Meritless</u>

In addition to being premature, Keough's challenge to the conspiracy count is substantively without merit.

At bottom, Keough's duplicity argument takes issue with the fact that Count One of the indictment charges an agreement by the defendants to commit multiple criminal offenses. Keough essentially

6

asserts that no single agreement encompassed these multiple objectives; rather, there were multiple agreements that should have been charged as multiple conspiracies. Memorandum of Law, at 2-5. Thus, Keough claims that the indictment should have charged one agreement to steal goods and services from FOH for Keough's Rhode Island home, a second agreement to misappropriate FOH labor for Keough's Springfield residences, a third agreement to misappropriate FOH labor for Hallahan's Springfield residence, and so on.  Id.

Contrary to Keough's contentions, however, the fact that a single count alleges a conspiracy to commit several crimes does not make the charge duplicitous. As the First Circuit has recognized

> It has been clear since the Supreme Court's decision in Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942) that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects."

United States v. Nelson-Rodriguez, 319 F.3d 12, 31 (1st Cir. 2003) (holding that in conspiracy charging planned importations of cocaine, heroin, and marijuana, "each of these acts was part of a single conspiracy"); see also United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992) (noting that the principle is "well-settled").

As Chief Justice Stone wrote in  Braverman for a unanimous Supreme Court:  "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes.  The one agreement cannot be taken to be several agreements and hence several

conspiracies because it envisages the violation of several statutes rather than one."  317 U.S. at 53; see <u>United States v. Berger</u>, 22 F.Supp.2d 145, 150-51 (S.D.N.Y. 1998) (same).

The Fifth Circuit stated the law thus:

> "The several acts and means of making the conspiracy effective are related acts which enter into the crime, but still the single crime is that of combining and conspiring together . . . . Duplicity in an indictment means the charging of two or more separate and distinct offenses in one count, not the charging of a single offense into which related acts enter as ways and means of accomplishing the purpose."

<u>Lott v. United States</u>, 309 F.2d 115, 121 (5th Cir. 1962) (quoting <u>Frankfort Distilleries, Inc. v. United States</u>, 144 F.2d 824, 832 (10th Cir. 1994)).

Consistent with these principles, the First Circuit has found a single conspiracy to exist if "all of the alleged conspirators directed their efforts towards the accomplishment of a common goal or overall plan."  <u>Drougas</u>, 748 F.2d at 17.  In determining whether activity is part of a single conspiracy or multiple conspiracies, courts should assess the commonality of such factors as the nature and motive of the illegal activity, the method of operation (including design, implementation, logistics, relevant geography, and modus operandi), and the scope of co-conspirator involvement. <u>LiCausi</u>, 167 F.3d at 45; <u>United States v. Boylan</u>, 898 F.2d 230, 241 (1st Cir. 1990); <u>United States v. Rivera-Santiago</u>, 872 F.2d 1073, 1079 (1st Cir. 1989); <u>Drougas</u>, 748 F.2d at 17.  The First Circuit has further stated that an assessment of whether there is a single or multiple conspiracy should also consider the degree to which

there is (1) a common goal; (2) interdependence among the participants; and (3) overlap among the participants. United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999).[1]  Although all of these factors are instructive, ultimately the question of whether a count charges a single conspiracy or multiple conspiracies is determined based on "the totality of the evidence."  Id. at 696.

Consideration of the foregoing factors in the context of the indictment at issue here compels the rejection of Keough's duplicity challenge to Count One.  At the most fundamental level, all of the allegations of the conspiracy count arise out of and relate to the defendants scheme to defraud FOH and its governmental funders.  The objects of the conspiracy all relate to the defendants' misconduct at FOH or the attempt to conceal it.  Indictment, ¶¶ 17-19. Similarly, all of the manner and means of the conspiracy relate to the defendants' activities at FOH.  Indictment ¶¶ 20-24.  Lastly, each of the overt acts is integrally connected as well.

As a result, all of the factors articulated by the First Circuit as relevant to distinguishing between a single conspiracy and a multiple conspiracy establish the existence of a single conspiracy here.  There was a common goal – the extraction of property, money, services, or other things of value from FOH and the

---

[1] The factors identified in Portela are articulated somewhat differently from those identified in the long line of First Circuit precedent leading up to LiCausi, which was decided just two weeks before Portela.  Because Portela did not indicate any intent to overrule or modify LiCausi and its progeny, it is appropriate to assume that the factors identified in both cases remain relevant to the analysis.

governmental agencies that funded FOH. The defendants shared a common method of operation, as each of the defendants used their positions to extract value from FOH and the agencies. See, e.g., Indictment ¶ 23 (each "charged personal work performed on FOH time and hours not worked at FOH to FOH."). Similarly, both Keough and Hallahan received the use of free labor (charged to FOH) for the improvement of their homes. Compare Indictment ¶ 44 with ¶ 94.[2]

In addition, the Indictment alleges overlap in the participants as well as material interdependence among them. The Indictment make plain the overwhelming involvement of Keough, who occupied the heart of the conspiracy's activities. Although the scope of Hallahan's and Guzman's involvement was not as extensive, they nonetheless were material participants. Hallahan, for example, was responsible for ensuring the accuracy of the FOH timesheets (Indictment, ¶ 11) and nonetheless processed numerous false FOH timesheets (Indictment, ¶¶ 45, 64, 82) and Guzman recruited residents and inmates on work release at FOH to perform personal work for Keough (Indictment, ¶ 22). Such conduct provides the requisite interdependence – their activities clearly were "advantageous to the success" of Keough's

---

[2] Paragraph 44 alleges: "Beginning in January, 2000, defendants KEOUGH and GUZMAN caused a FOH employee to travel to the Rhode Island residence and perform work on defendant KEOUGH's personal residence while on FOH time."
Paragraph 94 alleges: "In or about July, 2004, at defendant KEOUGH's direction, a FOH employee and several Hampden County work release inmates delivered and spread a load of mulch at defendant HALLAHAN's residence at 5 Desrosiers Street, Springfield, MA while on FOH time."

unlawful operation of FOH. Portela, 167 F.3d at 695 (quoting United States v. Wilson, 116 F.3d 1066, 1076 (5th Cir. 1997)).

In view of these facts, Keough fails in his attempt to subdivide the charged conduct into separate mini-conspiracies – the Rhode Island Conspiracy, the Free Maintenance Conspiracy, the Mulch Conspiracy, and so on. Memorandum of Law, at pages 2-5. As described above, all of the conduct was part and parcel of the corrupt manipulation and operation of FOH for the personal benefit of the defendants – involving the same type conduct, centered around the same organization, implemented in the same way, for the same purpose, towards the same end.

Thus, Keough's "Mulch Conspiracy," "Free Maintenance Conspiracy," his "Rhodes [sic] Island Conspiracy," and all the rest are parts of the charged conspiracy in Count One, since all involved a scheme to defraud FOH and the governmental agencies that funded FOH of money and the intangible right to the defendants' honest services. In the first of these claimed mini-conspiracies, Keough directed a FOH employee and several Hampden County work release inmates to deliver and spread a load of mulch at Hallahan's residence while on FOH time. Indictment, ¶ 94. In the second claimed mini-conspiracy, inter alia, Keough directed a FOH employee to perform maintenance at 1117-1119 Sumner Avenue, Springfield, MA while on FOH time. In the third, inter alia, Keough and Guzman caused a FOH employee to travel to the Rhode Island residence and perform work on Keough's personal residence while on FOH time.

11

Indictment, ¶ 44. However hard Keough may pull at the charged conspiracy in Count One, "[t]he conspiracy is the crime, and that is one, however diverse its objects." Braverman, 317 U.S. at 54.

In United States v. Bruun, 809 F.2d 397 (7th Cir. 1987), the defendants were charged with a conspiracy count that alleged that they committed "offenses against the United States," including interstate transportation of stolen securities, in violation of 18 U.S.C. § 2314; making false bank entries, in violation of 18 U.S.C. § 1005; misapplication by bank officers, in violation of 18 U.S.C. 656, and extortion, 18 U.S.C. § 1951. Id. at 406. The Seventh Circuit stated, "it appears to us that there was in fact a single conspiracy, the object of which was to defraud [a bank]. That the means used to accomplish this goal varied does not change the result." Id. The court further noted that "the face of the indictment quite clearly alleges that all of the substantive criminal offenses were part of the same conspiracy." Id. at 407.

Similarly, in Robinson v. United States, 210 F.2d 29 (D.C. Cir. 1954), the defendants were charged in a single count with conspiring to embezzle and misapply union funds, conceal material facts, and make false statements and entries. Id. at 31. On appeal, the D.C. Circuit rejected a defendant's argument that the count charged three different conspiracies, reasoning that the count "did charge a single conspiracy to commit several closely related offenses." Id.

The mere fact that Hallahan or Guzman did not – as Keough largely did – participate in every transaction undertaken by the conspiracy does not mean that their activities must be viewed as

12

somehow associated with a "different" conspiracy. The First Circuit has made clear that in a single conspiracy, it is not necessary that the membership remain static, that all members join at the same time, or that a given member knows all his fellow coconspirators. United States v. Sepulveda, 15 F.3d 1161, 1191 (1st Cir. 1993). It is not necessary that each defendant participate in every transaction or know every detail of the conspiracy. LiCausi, 167 F.3d at 45. It is not required that each conspirator realize the full extent of the conspiracy. United States v. Rivera-Ruiz, 244 F.3d 263, 268 (1st Cir. 2001). The requisite "interdependence" can exist even if different coconspirators are not specifically aware of the criminal activity perpetrated by other coconspirators, or even of the existence of those coconspirators. Portela, 167 F.3d at 697-99. Moreover, a conspiracy's method and tactics may evolve over time:

> [C]onspiracies are like other business organizations: a conspiracy may hire, fire, retool, change suppliers, expand, downsize, refine its operating practices, undertake new marketing strategies, or shift its priorities from time to time without sacrificing its essential identity.

Sepulveda, 15 F.3d at 1191.

All of the allegations pertaining to Count One flow from the activities of a single enterprise: the FOH that Keough, Guzman, and Hallahan managed. All relate to the manner in which the defendants abused their positions at FOH and defrauded FOH and its funding sources for their own personal benefit. All of the defendants are charged with having actively participated and assisted in some or

13

all of the alleged misconduct. The conspiracy count displays overlap in time, participants, conduct and purpose. Thus, it is "a single offense into which related acts enter as ways and means of accomplishing the purpose." <u>Lott</u>, 309 F.2d at 121 (quotation omitted).

"[B]ecause the essence of the crime charged in Count One is a single scheme to defraud [FOH and the governmental agencies], the indictment is not duplicitous." <u>Aracri</u>, 968 F.2d at 1519. On these facts, as alleged, charging a unitary conspiracy is wholly appropriate, and Keough's duplicity-based challenge to the conspiracy count should be rejected.

III. <u>Conclusion</u>

For the foregoing reasons, the Government respectfully asks that the Court deny defendant Keough's Motion To Dismiss Count One Of The Second Superseding Indictment (Duplicity).

Filed this 27th day of November, 2006.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


　　/s/ Steven H. Breslow
STEVEN H. BRESLOW
Assistant United States Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                          Springfield, Massachusetts
                                      November 27, 2006


    I, Steven H. Breslow, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by electronically filing and mailing said motion to:

Daniel Kelly, Esq.
101 State Street
Suite 715
Springfield, MA  01103
Counsel for defendant Francis G. Keough

Lori Levinson, Esq.
66 West Street
Pittsfield, MA  01201
Counsel for Defendant Angel T. Guzman

Michael Foy, Esq.
935 Main Street, Suite 203
Springfield, MA  01103
Counsel for Defendant Michael P. Hallahan


                              /s/ Steven H. Breslow
                              STEVEN H. BRESLOW
                              Assistant United States Attorney