UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-N-04-30032-MAP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FRANCIS G. KEOUGH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT KEOUGH'S
MOTION TO DISMISS COUNT 29 OF  THE SECOND SUPERSEDING INDICTMENT
AND MOTION TO DISMISS COUNTS 34, 35, 37, 39, 41, AND 43
OF THE SECOND SUPERSEDING INDICTMENT

The United States of America, by and through Michael J.
Sullivan, United States Attorney for the District of Massachusetts,
and Steven H. Breslow, Assistant United States Attorney, hereby
files this response to defendant Francis G. Keough's Motion To
Dismiss Count 29 (Extortion) Of The Second Superseding Indictment
(Docket No. 121) and Motion To Dismiss Counts 34, 35, 37, 39, 41,
And 43 (Witness Tampering) Of The Second Superseding Indictment
(Docket No. 119).

Keough moves to dismiss each of these counts as facially
defective.   As demonstrated below, Keough's arguments are
substantively without merit.

I.    Background

     A.    The Government's Indictment

Keough is currently charged in a fifty-count second superseding
indictment (the "Indictment") charging him with conspiracy to commit
mail fraud, substantive mail fraud, extortion, obstruction of

1

justice, making false statements, witness tampering, perjury, criminal contempt, and tax fraud, all in connection with his role as Executive Director of Friends of the Homeless, Inc. ("FOH"), a non-profit organization in Springfield, MA.

 B. <u>The Extortion Count</u>

 Count 29 charges Keough with extortion, in violation of 18 U.S.C. § 1951, as follows:

> Between on or about April 23, 1999 and December 8, 1999, in the District of Massachusetts, FRANCIS G. KEOUGH III, defendant herein, did knowingly, willfully, and unlawfully affect and attempt to affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, in that the defendant unlawfully obtained $29,000.00 from The Ware Group, Inc., which property was not due the defendant and The Ware Group's consent having been induced by wrongful use and threat of use of economic harm and under color of official right.

Indictment, ¶ 118. This Count incorporates the allegations set forth in paragraphs 1 through 98. Indictment, ¶ 117.

 Paragraph 30 alleges that "[o]n or about February 26, 1999, defendant KEOUGH began charging the building materials for the construction of his Rhode Island residence to the account of the general contractor handling the 501 Worthington Street renovation in order to obtain the contractor's discount, and because defendant KEOUGH did not have the money to purchase the goods and materials at the time. Indictment, ¶ 34.

Paragraph 34 alleged that "[o]n or about April 30, 1999, defendant KEOUGH caused the general contractor handling the 501 Worthington Street renovation to make a second payment towards defendant KEOUGH's purchases of building materials on the contractor's account to prevent the suspension of the charge account." Indictment, ¶ 34.

C.    The Witness Tampering Counts

Counts 34, 35, 37, 39, 41, and 43 all charge Keough with witness tampering, in violation of 18 U.S.C. ¶ 1512. All of these Counts incorporate the allegations set forth in paragraphs 1 through 98. Indictment, ¶¶ 127, 129, 133, 137, 141, and 145.

Count 34 charges that:

> From on or about March 16, 2004, through September 21, 2004, within the District of Massachusetts, FRANCIS G. KEOUGH III, defendant herein, did knowingly corruptly persuade and attempt to corruptly persuade Witness A with the intent to influence the testimony of Witness A in a federal grand jury proceeding by telling Witness A in substance that Witness A should testify that Witness A worked at defendant Francis G. Keough's residence in Charleston, Rhode Island while on personal time, and that Witness A exercised bad judgment and was at fault for allowing Hampden County House of Corrections inmates to perform personal work.

Indictment, ¶ 128.

Count 35 charges that:

> In or about late, 2004, or early, 2005, within the District of Massachusetts, FRANCIS G. KEOUGH III, defendant herein, did knowingly corruptly persuade and attempt to corruptly

> persuade Witness A with the intent to influence the testimony of Witness A in an official proceeding by asking Witness A to tell the Federal Bureau of Investigation that Witness A personally observed defendant KEOUGH give $30,000.00 in cash to the owner of The Ware Group, Inc.

Indictment, ¶ 130.

Count 37 charges that:

> On or about June 14, 2005, within the District of Massachusetts, FRANCIS G. KEOUGH III, defendant herein, did knowingly corruptly persuade and attempt to corruptly persuade Witness B with the intent to influence the testimony of Witness B in a federal grand jury proceeding by telling Witness B in substance that Witness B should testify that Witness B was homeless at the time that Witness B enrolled in the ISSI program, and that Witness B should not mention the fact that defendant KEOUGH had tenants living in the basement at 24-26 Palmer Avenue, Springfield, Massachusetts.

Indictment, ¶ 134.

Count 39 charges that:

> In or about June, 2005, within the District of Massachusetts, FRANCIS G. KEOUGH III, defendant herein, did knowingly corruptly persuade and attempt to corruptly persuade Witness C with the intent to influence the testimony of Witness C in a federal grand jury proceeding by telling Witness C in substance that he protects his friends, that everyone should get on the same page, and that if Witness C wanted to say that Witness C was homeless at the time that Witness C enrolled in ISSI program, then he would back up Witness C.

Indictment, ¶ 138.

Count 41 charges that:

> On or about May 24, 2005, within the District
> of Massachusetts, FRANCIS G. KEOUGH III,
> defendant herein, did knowingly attempt to
> corruptly persuade Witness D with the intent
> to influence the testimony of Witness D in a
> federal grand jury proceeding by following
> Witness D in his vehicle and eventually
> causing Witness D to stop in the breakdown
> lane of Interstate 91 in an attempt to
> "remind" Witness D that Witness D had seen
> defendant Francis G. Keough III give cash to
> the owner of the Ware Group, Inc., a fact that
> Witness D disputed.

Indictment, ¶ 142.

Count 43 charges that:

> Sometime between July 29, 2005 and August 11,
> 2005, within the District of Massachusetts,
> FRANCIS G. KEOUGH III, defendant herein, did
> knowingly attempt to corruptly persuade
> Witness E with the intent to influence the
> testimony of Witness E in a federal grand jury
> proceeding by attempting to encourage Witness
> E to state that hours not worked, but
> fraudulently recorded on FOH timesheets for
> certain FOH intake workers had actually been
> worked by the FOH intake workers on other,
> unrecorded occasions.

Indictment, ¶ 146.

Each of these Counts references earlier allegations that make clear that the "grand jury proceeding" and "official proceeding" specified in the Counts is the grand jury and FBI investigation that yielded the instant Indictment. For example, one of the charged objects of the defendants' conspiracy was "to obstruct <u>the</u> federal grand jury investigation by concealing and attempting to conceal evidence and causing and attempting to cause potential witnesses to make false statements to federal investigators and the grand jury

investigation in order to perpetuate the scheme to defraud." Indictment, ¶ 19 (emphasis added).

Similarly, the Indictment alleged specific instances of witness tampering relating to the instant grand jury investigation. These allegations correspond specifically to several of the contested Counts.

For example, the Indictment alleged that "[o]n or about June 14, 2005, defendant KEOUGH, aided by defendant GUZMAN, attempted to obstruct the grand jury investigation by telling Witness B in substance that Witness B should testify before the federal grand jury that Witness B was homeless at the time that Witness B enrolled in the ISSI program, and that Witness B should not mention the fact that defendant KEOUGH had tenants living in the basement at 24-26 Palmer Avenue, Springfield, Massachusetts." Indictment, ¶ 97 (emphasis added); compare Indictment, ¶ 134 (Count 37).

Similarly, the Indictment alleged that "[s]ometime between July 29, 2005 and August 11, 2005, defendant KEOUGH attempted to influence the testimony of Witness E by trying to convince Witness E to repeat a false, exculpatory story to federal investigators or the federal grand jury to explain away false and fraudulent FOH timesheets submitted by defendant HALLAHAN." Indictment, ¶ 98 (emphasis added); compare Indictment ¶ 146 (Count 43).[1]

_____

[1] Finally, the Indictment alleged that "[i]n or about March, 2004, defendant KEOUGH met a FOH employee at a Friendly's Restaurant in Westfield, Massachusetts and asked the FOH employee

The Indictment also makes clear that the FBI was investigating Keough's construction of his Rhode Island home, and that Keough sought to defeat that investigation. Thus, the Indictment alleges that "[o]n December 16, 2002, defendant KEOUGH attempted to thwart an investigation of himself by, among other statements, falsely telling a FBI special agent that the heating system at the Rhode Island residence "wasn't done by anybody with Housing Authority connections." Indictment, ¶ 87.

II. <u>The Extortion and Witness Tampering Counts Are Proper</u>

    A. <u>Principles of Law</u>

Rule 7(1)(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment "shall be a plain, concise and definite statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(1)(c)(1).

It is well-settled that an indictment is sound if it: (1) contains the elements of the offense charged; (2) fairly informs the defendant of the charge against which he must defend; and (3) enables him to plead an acquittal or conviction in bar of future prosecution for the same offense. <u>United States v. Sedlak</u>, 720 F.2d 715, 719 (1st Cir. 1983) (citing <u>Hamling v. United States</u>, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)); <u>see also</u> <u>United States v. Sepulveda</u>, 15 F.3d 1161, 1192 (1st Cir. 1993);

---

to testify falsely before <u>the</u> federal grand jury." Indictment, ¶ 92 (emphasis added); <u>compare</u> Indictment, ¶ 128 (Count 34).

United States v. Bank of New England, N.A., 640 F.Supp. 36, 39 (D. Mass. 1986).

      B.   The Extortion Count Is Not Defective

      Keough does not claim that the extortion count fails to set forth all the essential elements of the offense.  Rather, Keough first argues that the count is ambiguous because it appears to charge two theories of extortion (extortion under color of official right and extortion by wrongful use of actual or threatened force, violence, or fear). Keough also contends that the Indictment failed to allege the essential facts supporting either theory.

      1.   The Indictment Is Not Ambiguous

      Keough's ambiguity argument makes no sense.  Keough contends that because the count is stated with the conjunctive "and" rather than the disjunctive "or," the count is ambiguous.  This argument is senseless because the count's conjunctive language plainly alleges both theories of extortion.[2]  See United States v. Soto-Beníquez, 356 F.3d 1, 48 (1st Cir. 2004) (holding that because indictment joined drug quantities and types by the conjunctive term 'and,' "there was no ambiguity about the crime charged"); United States v. Banks, 78 F.3d 1190, 1203 (7th Cir. 1996) (holding no ambiguity where indictment was phrased in conjunctive rather than disjunctive); United States v. Watts, 950 F.2d 508, 515 (8th Cir. 1991) (same).

_____

   [2]  In particular, the government will prove at trial that Keough committed his extortion under color of official right and through the wrongful use of fear of economic loss.

2.   <u>The Indictment States Essential Facts Supporting The Count</u>

Keough's claim that the Indictment lacks the requisite essential facts is also meritless.   The Indictment alleges the following essential facts concerning the extortion in Count 29: (a) the dates - between April 3, 1999 and December 8, 1999; (b) the amount extorted ($29,000); (c) the extorted party (The Ware Group, Inc.); (d) the relationship between the extorted party and FOH (general contractor for the 501 Worthington Street renovation); (e) the means of extortion (charging building materials for Keough's home to the contractor's account); and (f) the motive for the extortion (because Keough wanted to obtain the contractor's discount and because Keough lacked the money to pay for the materials himself).   Indictment, ¶¶ 30, 34, 118.   These facts fairly inform Keough of the charge against which he must defend and enable him to plead an acquittal or conviction in bar of future prosecution for the same offense.   <u>Sedlak</u>, 720 F.2d at 719; <u>Sepulveda</u>, 15 F.3d at 1192.

Keough argues that the Indictment lacks any stated essential facts supporting the theory that Keough engaged in extortion through the wrongful use of fear of economic loss.   However, none of the cases cited involved the dismissal of an indictment for failure to state essential facts relating to the specific theory of extortion. Rather, these cases generally concerned challenges to the sufficiency of the evidence at trial.   <u>See</u>, <u>e.g.</u>, <u>United States v. Rivera-Rangel</u>, 396 F.3d 476 (1st Cir. 2005); <u>United States v.</u>

<u>Cruzado-Laureano</u>, 404 F.3d 470 (2st Cir. 2005).  Keough seeks more than the law demands: particular allegations supporting in detail each of the government's theories of extortion.

Keough's motion to dismiss fails because the extortion count is valid "on its face." <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956).  "'An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on its merits.'" <u>United States v. Valencia-Lucena</u>, 925 F.2d 506, 511 (1st Cir. 1991) (quoting <u>Costello</u>, 350 U.S. at 363).  "A court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is [merely] a preliminary phase . . . and all constitutional protections will be afforded at trial." <u>United States v. Maceo</u>, 873 F.2d 1, 3 (1st Cir. 1989).

In any event, the Indictment alleges sufficient essential facts to fairly inform Keough of the charge against which he must defend and enable him to plead an acquittal or conviction in bar of future prosecution for the same offense. <u>Sedlak</u>, 720 F.2d at 719; <u>Sepulveda</u>, 15 F.3d at 1192.  Here, the Indictment sufficiently alleges facts to support the government's theories that Keough extorted The Ware Group, Inc. through wrongful use of fear of economic loss and under color of official right.

For example, the Indictment alleges that: (a) Keough served as Executive Director of FOH; (b) Keough's duties and responsibilities

included not just the daily operations of FOH, but also the overall administration of FOH's budget and finances, including compliance with the federal rules and regulations governing HUD grant recipients; (c) FOH relied heavily upon various federal and state grants and service contracts administered through the City of Springfield in order to its payroll and operations; (d) after the City of Springfield approved FOH's grant applications, FOH entered into a contract with the City of Springfield in which FOH agreed to adhere to certain federal rules and regulations; and (e) FOH accepted federal and state funds for the shelter renovations performed by The Ware Group, Keough's extortion victim.  Indictment, ¶¶ 1-6, 9, 28, and 29.

Thus, the Indictment alleged sufficient facts to support the theory that as Executive Director in charge of daily operations, budget and finance, Keough was in a position of authority over its general contractor for the shelter renovations, and thus in a position to cause The Ware Group to fear economic loss if it did not pay for Keough's building materials.  The Indictment also alleged sufficient facts to support the theory that Keough acted under color of official right, since he was responsible for carrying out a federal program or policy.[3]

---

[3]   The First Circuit has extended the definition of "public official" in the extortion context to the executive director of a redevelopment authority. United States v. Hathaway, 534 F.2d 386, 395 (1st Cir. 1976).  The Supreme Court has defined "public official" in the federal bribery context as an individual who "must possess some degree of official responsibility for carrying out a federal program or policy." Dixson v. United States, 465

As set forth below at page 18, to the extent that the Court harbors any concern that the Indictment's allegations are not sufficiently precise to avoid a double jeopardy problem, the Court should permit Keough to file a bill of particulars rather than dismiss any of the contested counts.

C.    The Witness Tampering Counts Are Not Defective

Keough does not claim that the witness tampering counts fail to allege the essential elements of the crime. Instead, Keough bases his motion to dismiss on two alleged factual frailties in the witness tampering counts: first, that the counts do not identify the subject grand jury or official proceeding; and second, that they do not sufficiently identify the subject witnesses by name. Memorandum of Law, at 2, 6-7. To the contrary, the Indictment does identify the proceedings as the instant grand jury and FBI investigation into Keough's conduct at FOH, and also provides sufficient factual detail about the individual witness tampering to satisfy the requirements of Rule 7(1)(c).

1.    Identification of the Proceedings.

Keough's claim that he cannot discern the identity of the proceedings from the face of the Indictment must fail, since the

_____

U.S. 482, 499 (1984). The focus is "not simply whether the person had signed a contract with the United States or agreed to serve as the Government's agent, but rather whether the person occupies a position of public trust with official federal responsibilities." Id. at 496. Therefore, executive directors of non-profit organizations that administer federal housing programs can qualify as "public officials" under the federal bribery statute. Id.

Indictment specifies, in numerous instances, that the official and grand jury proceedings pertain to the FBI and grand jury investigation of Keough that yielded the instant charges. For example, the Indictment alleges that the defendants sought "to obstruct the federal grand jury investigation by concealing and attempting to conceal evidence and <u>causing and attempting to cause potential witnesses to make false statements to federal investigators and the grand jury investigation</u> in order to perpetuate the scheme to defraud." Indictment, ¶ 19 (emphasis added).

Moreover, several of the disputed Counts relate directly to prior allegations in the Indictment that specify the instant grand jury investigation as the proceeding in issue. <u>Compare</u> Indictment, ¶ 128 (Count 34) with ¶ 92 (relating to Witness A and specifying "<u>the</u> federal grand jury") (emphasis added); <u>compare</u> ¶ 134 (Count 37) with ¶ 97 (relating to Witness B and specifying "<u>the</u> federal grand jury")(emphasis added); <u>compare</u> ¶ 146 (Count 43) and ¶ 98 (relating to Witness E and specifying "<u>the</u> federal grand jury")(emphasis added). Thus, the Indictment sufficiently identifies the proceedings in the disputed counts.

Keough's reliance on <u>United States v. Murphy</u>, 762 F.2d 1151 (1st Cir. 1985) fails for two reasons. First, in that case, "[w]hat the proceeding was, or was to be, was <u>in no way</u> indicated" by the indictment." <u>Id.</u> at 1153. The First Circuit emphasized that the indictment did not identify <u>any</u> proceeding in which defendants were allegedly attempting to influence [the witness's] testimony". <u>Id.</u>

at 1154 (emphasis in original).  By contrast, the instant Indictment
makes plain that the official proceedings here were the FBI and
grand jury investigations into Keough, as set forth above.

    Second, Murphy involved highly distinct underlying facts, since
(a) the indictment did not allege any particularized tampering; and
(b) there were in fact several official proceedings that could have
been the subject of the count including: (i) a proceeding against
the defendants, (ii) a proceeding against a man named Haythem
Dawlett, and (iii) a state narcotics investigation involving between
32-35 arrestees.  Id. at 1152.  Thus, the First Circuit correctly
observed that "[i]t is wholly unclear from the indictment whether
the grand jury was charging that the defendants tried to influence
[the witness's] testimony in the proceeding against Dawlett, or in
the proceeding against them, or in some other proceeding
altogether."  Id. at 1154.

    Here, by contrast, each of the witness tampering counts alleges
particularized tampering that pertains only to the specific FBI and
grand jury investigation of Keough that yielded the instant case.
For example, Count 34 alleges that Keough told directed Witness A to
testify in substance that "Witness A worked at defendant Francis G.
Keough's residence in Charleston, Rhode Island while on personal
time, and that Witness A exercised bad judgment and was at fault for
allowing Hampden County House of Corrections inmates to perform
personal work," thus undermining the FBI and federal grand jury
investigation into whether FOH personnel had improperly provided
private work to Keough.  Indictment, ¶ 128; see also ¶ 22 (alleging

14

that Keough and Guzman recruited residents and inmates on work release at FOH to perform personal work for" Keough).

Similarly, Count 43 alleges particularized tampering aimed at thwarting the FBI and grand jury investigations into the fraudulent submission of false FOH timesheets for intake workers. See Indictment ¶ 45 (Keough and Hallahan agreed to submit false FOH timesheets for Hallahan and another FOH intake employee); ¶¶ 64 and 82 (Keough and Hallahan processed false FOH timesheets for certain intake workers who did personal work and favors for the benefit of Keough.)

Further, Counts 35 and 41 allege particularized tampering aimed at thwarting the FBI and grand jury investigations into his extortion of The Ware Group, Inc.  Count 35 alleges that Keough asked Witness A to "tell the Federal Bureau of Investigation that Witness A personally observed defendant KEOUGH give $30,000.00 in cash to the owner of The Ware Group, Inc."  Indictment, ¶ 130. Keough thus sought to thwart the investigation into whether Keough "unlawfully obtained $29,000.00 from The Ware Group, Inc.," which ultimately formed the basis of Count 29.  Indictment, ¶ 118.  Count 41 similarly relates to Keough's attempt to defeat investigation into this extortion.

Lastly, Counts 37 and 39 charge Keough with particularized tampering aimed at thwarting the FBI and grand jury investigations into his fraudulent manipulation of the ISSI program.  Count 37 charges Keough with instructing to testify that Witness B was homeless at the time that Witness B enrolled in the ISSI program and

15

that Witness B should not mention the fact that Keough had tenants living in the basement of his building at 24-26 Palmer Avenue, thus undermining the grand jury's investigation of Keough manipulation of the ISSI program with respect to his tenants at 24-26 Palmer Avenue. <u>See</u> Indictment, ¶¶ 69, 77, 79, 80.  Count 39 similarly relates to Keough's attempts to undermine the investigation of the ISSI program.

  2. <u>Identification of the Witnesses</u>.

  Keough claims that the witness tampering counts are defective because they do not identify the witnesses by name, but Keough notably fails to cite a single case in which a court has dismissed a count for this failure.

  While the witness tampering counts do not identify the witnesses by name, as set forth above, they do provide more than enough detail to satisfy Rule 7(1)(c).  First, each witness is identified by a letter, so that Keough can differentiate among the witnesses.  Because each count particularizes the witness by letter designation, there is no possibility, then, that a count can refer to <u>any</u> witness.  Similarly, there is no possibility that the government will "ke[ep] its options open" and argue multiple theories of witness identity, as it did with the proceedings in <u>Murphy</u>, 762 F.3d at 1155.  Second, as set forth above, each count particularizes the specific substance of the tampering, which provides Keough with more than "sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment."  <u>United States v. Tomasetta</u>, 429 F.2d 978, 979 (1st

Cir. 1970); see also Murphy, 762 F.2d at 1154 (stating that "[c]rucial to any defense to a charge under the statute is at least some indication of the identity of the proceeding in which the defendant tried to influence testimony.") (emphasis added). Third, each count is particularized by date(s) of the alleged tampering.

"This is not a case, such as United States v. Murphy, where the indictment fails to specify the events to which the charge refers." Bank of New England, N.A., 640 F.Supp. at 40 (holding that a count that "specifies the dates, times, and locations of the events constituting the alleged scheme to conceal, while relying on statutory language unsupported by additional facts to charge the existence of the scheme, has stated the 'essential facts.'").

Because the Indictment alleges with particularity "the nature of the conduct 'at the core of criminality,' the nature of the [witness tampering], and the praxis employed to those ends," the motion to dismiss the witness tampering counts should be denied. United States v. Penagaricano-Soler , 911 F.2d 833, 840 (1st Cir. 1990) (distinguishing Murphy, 762 F.2d 1151) (quoting Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)).

III. A Bill Of Particulars Can Cure Any Double Jeopardy Concern

To the extent that the Court harbors any concern that the Indictment's allegations are not sufficiently precise to avoid a double jeopardy problem, the Court should permit Keough to file a bill of particulars rather than dismiss any of the contested counts.

Although a bill of particulars cannot cure an invalid indictment, United States v. Murphy, 762 F.2d at 1154, "it can,

17

however, aid our judgment of the double-jeopardy question with respect to an otherwise sound one, since a defendant may rely on the entire record as a bar to future prosecutions." <u>Bank of New England, N.A.</u>, 640 F.Supp. at 40 (citing Russell, 369 U.S. at 764; <u>United States ex rel. Ballard v. Bengston</u>, 702 F.2d 656, 660 (7th Cir. 1983)).

IV.   <u>Conclusion</u>

For the foregoing reasons, the Government respectfully asks that the Court deny defendant Keough's Motion To Dismiss Count 29 (Extortion) Of The Second Superseding Indictment and Motion To Dismiss Counts 34, 35, 37, 39, 41, And 43 (Witness Tampering) Of The Second Superseding Indictment

Filed this 27th day of November, 2006.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


    /s/ Steven H. Breslow
STEVEN H. BRESLOW
Assistant United States Attorney

18

CERTIFICATE OF SERVICE

Hampden,  ss.                          Springfield, Massachusetts
                                       November 27, 2006


       I,  Steven  H.  Breslow,  Assistant  U.S.  Attorney,  do  hereby
certify  that  I  have  served  a  copy  of  the  foregoing  by  electronically
filing  and  mailing  said  motion  to:

Daniel Kelly, Esq.
101 State Street
Suite 715
Springfield, MA  01103
Counsel for defendant Francis G. Keough

Lori Levinson, Esq.
66 West Street
Pittsfield, MA  01201
Counsel for Defendant Angel T. Guzman

Michael Foy, Esq.
935 Main Street, Suite 203
Springfield, MA  01103
Counsel for Defendant Michael P. Hallahan


                            ___/s/ Steven H. Breslow_____
                            STEVEN H. BRESLOW
                            Assistant United States Attorney