refused, telling Keough that he already had told the FBI that he did not know what Frank Ware looked like. Keough told Witness A that he would try to have other individuals, including Witness D, say the same thing. See discussion of Count 40, set forth at page 18.

Count 37 / Witness B. The facts underlying the obstruction in Count 36 (set forth at page 17) form the basis for this witness tampering count.

Count 39 / Witness C. The facts underlying the obstruction in Count 38 (set forth at page 18) form the basis for this witness tampering count.

Count 41 / Witness D. The facts underlying the obstruction in Count 40 (set forth at page 18) form the basis for this witness tampering count.

Count 43 / Witness E. The facts underlying the obstruction in Count 42 (set forth at page 19) form the basis for this witness tampering count.

5.  Keough's False Statements (Counts 31 and 32)

The facts underlying the obstruction in Count 30 (set forth at page 14-15) form the basis for these false statements counts.

6.  Keough's Perjury (Count 44)

As set forth at page 2-5, Keough knowingly arranged for Guzman, Witness A, and others to provide him on FOH time with work for his own personal benefit. In addition, Keough deliberately and repeatedly failed to work his required forty hours per week at FOH.

On March 9, 2004, Keough appeared before the grand jury to produce FOH timesheets as a custodian of records.  He was notified that he was a target of the grand jury investigation, received his warnings about his rights to counsel and against self-incrimination, but agreed to answer certain questions.  In particular, Keough falsely stated that FOH's timesheets were accurate to the best of his knowledge.

    7.  Keough's Criminal Contempt (Count 45)

On July 29, 2005, Keough was arraigned on the instant indictment.  Magistrate Judge Kenneth P. Neiman found that Keough had violated his conditions of release based in part upon several instances of obstruction and witness tampering charged in the instant indictment,[6] but permitted him to remain on release and directed him not to have any contact with any witnesses or potential witnesses.  On August 1, 2005, Judge Neiman memorialized that order into writing.

Shortly after entry of that order, Keough had his wife call Witness A at FOH and asked him to come over to 1117 Sumner Avenue to look at a faulty water heater.  Upon arrival, Keough began asking Witness A whom he thought was cooperating against him.  Witness A left the house and immediately contacted the FBI.

_____

[6]  The government had also proffered evidence, not charged in the instant indictment, that on April 20, 2005, Keough threatened Special Agent Clifford Hedges of the FBI as Hedges attempted to serve Keough's wife with a grand jury subpoena.

On August 1, 2005, Special Agent Hedges served Michael Hallahan for an appearance on August 4, 2005. As set forth in the description of Count 42 at page 19, between July 29, 2005 and August 11, 2005, Keough told Witness E that Hallahan had received a subpoena and then presented Witness E with a handwritten statement that outlined a false, exculpatory statement regarding the fraudulent FOH timesheets.

On August 11, 2005, Judge Neiman revoked Keough's bail.

8.   Keough's False Income Tax Filings (Counts 46-50)

Counts 46-50 charge that Keough willfully filed false federal income tax returns for the years 1999, 2000, 2001, 2002, and 2003 because he knew that the returns did not report all of his total income.

This income included approximately $29,000 in income that he derived from his extortion of Frank Ware (Count 29) discussed at page 13-14, his fraudulent theft of goods and services (Count One) discussed at pages 3-4, his fraudulent receipt of his full wages and his theft of other FOH worker's wages (Counts 2-14) discussed at pages 4-6, his fraudulent receipt of ISSI rental income (Counts 17-22) discussed at pages 6-7; and capital gain from the fraudulent real estate transactions with Angel Guzman (Counts 24-25) discussed at pages 8-9.

II. <u>Argument</u>

    A.   <u>Principles of Law</u>

    Rule 8(a) of the Federal Rules of Criminal Procedure provides that two or more offenses may be charged in the same indictment if the offenses charged are "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

    The First Circuit has "construed this rule generously in favor of joinder." <u>United States v. Boulanger</u>, 444 F.3d 76, 87 (1st Cir. 2006) (citing <u>United States v. Melendez</u>, 301 F.3d 27, 35 (1st Cir. 2002)). Moreover, as the First Circuit has repeatedly recognized, "'[s]imilar' does not mean 'identical,' and we assess similarity in terms of how the government saw its case at the time of indictment." <u>Id.</u> (quoting <u>Melendez</u>, 301 F.3d at 35).

    "'In determining whether counts are properly joined for trial, we historically have considered whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred.'" <u>Boulanger</u>, 444 F.3d at 87 (quoting <u>United States v. Taylor</u>, 54 F.3d 967, 973 (1st Cir. 1995)).

    Rule 14(a) of the Federal Rules of Criminal Procedure states in pertinent part:

            [i]f it appears that a defendant is prejudiced
            by a joinder of offenses . . . in an indictment

> . . . , the court may order an election or
> separate trials of counts, grant a severance of
> defendants or provide whatever other relief
> justice requires.

Fed. R. Crim. Pro. 14(a).

The First Circuit reviews a district court's denial of a severance motion under Rule 14 for abuse of discretion. United States v. Tracy, 989 F.2d 1279, 1283 (1st Cir. 1993). "The mere act of joining counts in an indictment, or having multiple counts in an indictment results in some prejudice." United States v. Scott, 659 F.2d 585, 589 (5th Cir. 1981). Rule 8 anticipates "[p]rejudice to this limited degree." Id.

Therefore, the denial of a severance motion made under Rule 14 "will not be reversed unless the challenger makes `a strong showing of prejudice.'" Tracy, 989 F.2d at 1283 (quoting United States v. Gray, 958 F.2d 9, 14 (1st Cir. 1992)). "To make the requisite strong showing of prejudice, a defendant `must present enough information . . . to satisfy the court that the claim of prejudice is genuine.'" United States v. Yefsky, 994 F.2d 885, 896 (1st Cir. 1993) (quoting Tracy, 989 F.2d at 1284)).

"Speculative allegations of prejudice fall far short of the prejudice required to prove an abuse of discretion in denying a motion for severance." Yefsky, 994 F.2d at 896. The mere allegation that the strength of the evidence on one count may spillover and benefit weaker evidence on a joined count does not warrant a severance of the counts. Id. "This type of spillover is

25

standard fare whenever counts involving discrete incidents are
linked in a single indictment." <u>Taylor</u>, 54 F.3d at 974. The First
Circuit "repeatedly [has] held that such a garden variety side
effect, without more, is insufficient to require severance." <u>Id</u>. at
974; <u>Boulanger</u>, 444 F.3d at 88.

A jury instruction to consider each charge separately
"`minimize[s] any possible prejudice' from the joinder of the
offenses." <u>Tracy</u>, 989 F.2d at 1284 (quoting <u>United States v.
Natanel</u>, 938 F.2d 302, 308 (1st Cir. 1991)). Jury instructions
outlining the separateness of the counts and requiring the jury to
consider each charge separately make garden variety prejudicial
spillover arguments "especially weak." <u>Taylor</u>, 54 F.3d at 974. <u>See
also</u> <u>United States v. Chambers</u>, 964 F.2d 1250, 1251 (1st Cir. 1992)
(nature of evidence and jury instructions that prosecution must
prove each element of each count separately beyond a reasonable
doubt prevented any "real danger" of jury confusion or illegitimate
cumulation of the evidence on the various counts).

B.   <u>Counts 27 and 28 Are Properly Joined</u>

Counts 27 and 28 are properly joined. First, these counts are
laid under the same statute as the preceding 26 counts.[7] Second,
the charges are similar to the other charges in the indictment, in
that they essentially involve Keough's abuse of his position as

---

[7]   Count 1 charges a conspiracy to commit mail fraud, and
Counts 2-26 charges substantive mail fraud.

Executive Director of FOH. As a result, the involve the same
locations of many of the charges (the FOH shelters), the same
victims (FOH, its funding sources, and the public), which were
deprived of money and the intangible right to Keough's honest
services), and methods of operation (Keough's manipulation of FOH
for his own personal benefit through his interaction with FOH
residents and/or staff). See Boulanger, 444 F.3d at 87 (listing
factors considered by First Circuit for proper joinder).

Citing to no particular case beyond the standard authorities
that elaborate the general principles for severance, Keough
incorrectly claims that he would suffer "severe prejudice" by
joinder simply because Counts 27 and 28 involve sex and misconduct
that would not be admissible pursuant to Fed. R. Evid. 404(b).

First, Keough's misconduct with Female Residents A and B would
be admissible pursuant to Rule 404(b) because it shows his
opportunity as Executive Director to commit the remainder of his FOH
frauds. Moreover, the government expects to offer its proof in a
straightforward, non-salacious manner by simply eliciting that
Keough engaged in a sexual relationship with two women for whom he
obtained preferential treatment. Such conduct is not overly
prejudicial because it pales compared to the remainder of Keough's
charged conduct at FOH, which he operated in an outrageously corrupt
fashion (extorting an FOH contractor, stealing tens of thousands of
dollars from FOH in lost wages and materials, directing his tenants

27

to certify that they were homeless in order to receive ISSI payments, and instructing his staff and others to lie).

The mere fact that Counts 27 and 28 involve sex does not serve as a basis for their severance due to unfair prejudice.  In <u>United States v. Pagan-Santini</u>, 451 F.3d 258, 263-64 (1st Cir. 2006), the defendant was charged with conspiracy, perjury, and obstruction of justice.  The First Circuit approved the admission, over a Rule 403 objection, of evidence that the defendant had sexually abused a government witness prior to the trial of an alleged co-conspirator. The evidence included "relatively terse testimony" that the defendant had sought to kiss him, had sought to touch him, and had masturbated in front of him.  <u>Id.</u>  The First Circuit reasoned that its probative value was not substantially outweighed by the danger of unfair prejudice, emphasizing that the District Court gave the standard limiting instruction to the jury not to misuse the testimony and the testimony gave little detail about the episodes. <u>See</u> <u>United States v. Savage</u>, 390 F.3d 823, 829 (4th Cir. 2004) (approving admission of sexual incident in a fraud case, even though it "could have engendered some degree of distaste among the jurors").

C. <u>Counts 31-45 Are Properly Joined</u>

Counts 31-45 charge Keough with obstruction of justice, making false statements, witness tampering, perjury, and criminal contempt, each of which constitutes Keough's efforts to avoid prosecution on

28

the underlying conspiracy, extortion, and mail fraud charges that
are charged earlier in the instant indictment.  Counts 31-45 are
properly joined because Keough committed these crimes for the sole
purpose of defeating successful prosecution on the underlying
offenses.  Thus, the obstructive charges are sufficiently "connected
together" with the original mail fraud charges as part of a "common
scheme or plan" to justify joinder of the charges.  Fed. R. Crim. P.
8(a).  As this Court has itself recognized, "[t]he fact that a
defendant is sufficiently desperate to commit crimes to disrupt an
investigation may be evidence that he or she is guilty of the crime
being investigated."  United States v. Gilbert, 92 F.Supp.2d 1, 5
(D. Mass. 2000) (Ponsor, J.).

The First Circuit has approved the joinder of obstruction,
intimidation or perjury counts with the underlying substantive
counts as direct evidence of motive, intent, and consciousness of
guilt.  See United States v. Gonzalez-Sanchez, 825 F.2d 572, 587
(1st Cir. 1987) (holding that evidence of attempted witness
intimidation is admissible to prove consciousness of guilt); United
States v. Monahan, 633 F.2d 984, 985 (1st Cir. 1980) (holding that
evidence of witness intimidation is admissible to prove
consciousness of guilt); United States v. Scivola, 766 F.2d 37, 41-

42 (1st Cir. 1985) (holding that perjury and conspiracy were properly joined).[8]

In <u>United States v. Stackpole</u>, 811 F.2d 689, 693 (1st Cir. 1987), the defendant had moved under Rule 14 to sever arson-related counts from obstruction of justice counts. The defendant and others had developed a plan "to spirit" a cooperating witness out of Massachusetts. <u>Id.</u> at 692. The district court denied the severance motion. <u>Id.</u> The First Circuit held that the district court did not abuse its discretion by refusing the defendant's motion because "[w]ere the counts severed, substantially the same evidence would have been admitted in both resulting trials." <u>Id.</u> at 694. The court reasoned that in a separate arson trial, "the obstruction of justice acts would have been admissible to show consciousness of guilt," and in a separate obstruction of justice trial, "the arson activities would have been admissible to show obstruction of justice." <u>Id</u>. (citing <u>United States v. O'Connell</u>, 703 F.2d 645, 649 (1st Cir. 1983) (holding joinder of perjury charges and stolen goods charges permissible because virtually all of the same evidence would have been admissible at separate trials).

Virtually every circuit ruling on motions to sever obstruction

---

[8]   The government has located no federal authority discussing joinder of criminal contempt pursuant to Rules 8 or 14. However, in this case, where the criminal contempt involves repeated efforts to tamper with witnesses, the same reasoning discussed herein applies.

of justice or witness intimidation counts from the underlying
substantive counts under Rule 14 has recognized the propriety of
joinder. See United States v. Potamitis, 739 F.2d 784, 791 (2nd
Cir. 1984) (in affirming joinder of false statement, perjury, and
obstruction of justice charges with underlying substantive charges
under Rule 14, court states the argument of "inherent prejudice in
joining perjury and related counts with substantive offense charges
has been widely rejected.") (citations omitted).

The various circuits acknowledge that obstruction of justice
and witness intimidation evidence is admissible to prove the
defendant's motive, intent and consciousness of guilt in the
commission of the underlying substantive offenses. See e.g. United
States v. Malpiedi, 62 F.3d 465, 467, 469 (2nd Cir. 1995) (evidence
of document tampering and obstruction of justice admissible to prove
consciousness of guilt); United States v. Grecco, 995 F.2d 449, 454
(3rd Cir. 1993) (evidence of witness intimidation is admissible to
prove consciousness of guilt); United States v. Hayden, 85 F.3d 153,
159 (4th Cir. 1996) (evidence of witness intimidation is admissible
to prove consciousness of guilt and criminal intent); United States
v. Ballis, 28 F.3d 1399, 1409 (5th Cir. 1994) (evidence of
obstruction of justice is admissible to prove consciousness of
guilt); United States v. Balzano, 916 F.2d 1273, 1280 (7th Cir.
1990) (efforts to intimidate a witness are admissible to prove
consciousness of guilt) (citations omitted); United States v.

31

Gonzalez-Gonzales, 110 F.3d 647, 652 (8th Cir. 1997) (efforts to intimidate a witness are admissible to prove consciousness of guilt).

Against this great weight of authority, Keough cites only this Court's own decision in Gilbert, 92 F.Supp.2d 1, which has itself not been cited by any other court. Moreover, Gilbert is distinguishable from the instant case in several fundamental ways. First, because the government sought to introduce evidence that the defendant had harassed a witness who was also a former lover, the real possibility existed that the defendant had harassed the witness because he had ended their affair, rather than to obstruct the investigation. Id. at 5. This Court also observed that the evidence would "require a thorough airing of all the dirty linen relating to Gilbert's affair with [the witness], including her abandonment of her husband and children, her divorce, and the details of this tempestuous liaison." Gilbert, 92 F.Supp.2d at 6. Here, by contrast, Keough had no such relationship with any of the witnesses at issue. Instead, Keough's obstruction and tampering, like his false statements and perjury, all had a common motivation: to defeat the investigation.

Similarly, the probative value of Gilbert's false bomb threat (that it would somehow throw off the murder investigation) was significantly undermined by the fact that Gilbert "went to great lengths to conceal the fact that she was the caller." Id. As this

Court recognized, the government's arguments constituted "an awful lot of squeezing for precious little juice." Id. at 5. Here, by contrast, Keough's obstructive conduct - directed at witnesses, the investigating agent, and the grand jury itself – focused directly on thwarting the investigation into the underlying charges. Lastly, this Court found inflammatory the presentation of the evidence, which involved tape recordings featuring "graphic language, violent threats, and eery, intimidating voice transformations." Id. at 6. Here, no such presentation problems exist.

Keough's contention that the obstructive charges should be severed from the underlying charges because he is improperly prejudiced by joinder should be rejected because it is based on the faulty premise that evidence of these charges would not otherwise be admissible in a separate trial on the underlying charges. To the contrary, the obstruction of justice charge arising from Keough's efforts to avoid prosecution is properly joined to the original charges because it is, in fact, admissible to show his consciousness of guilt on those charges. See Stackpole, 811 F.2d at 694 (holding that joinder is proper where "substantially the same evidence would have been admitted in both resulting trials" if the counts were to be severed); see also United States v. Mackey, 117 F.3d 24, 27 (1st Cir. 1997) (holding that evidence supporting charges in one count of an indictment that was admitted as Rule 404(b) evidence supporting

charges in other counts of the same indictment "completely undermined any claim of unfair prejudice").

Similarly, evidence of Keough's involvement in the mail fraud charges would be admissible to show motive at a separate trial on the obstructive charges. Thus, even if severance were granted, the evidence supporting the obstruction of justice charge still would legitimately spillover into the separate trial on the original charges to show Keough's consciousness of guilt. See Mackey, 117 F.3d at 26 (noting that joinder was proper where same spillover would have occurred if the evidence supporting the challenged count had been admitted under Fed. R. Evid. 404(b)); see also Taylor, 54 F.3d at 974 n.5 (noting that even if two robberies in question had been charged in separate indictments, evidence of first robbery would have been admissible under Rule 404(b) to prove preparation, plan or knowledge regarding the second).

Because substantially the same evidence would be admitted in severed trials on the obstructive charges and the mail fraud charges, joinder is appropriate and does not improperly prejudice Keough. Severance, therefore, is unwarranted.

D.    Counts 46-50 Are Properly Joined

Counts 46-50 charge that Keough willfully filed false federal income tax returns for the years 1999, 2000, 2001, 2002, and 2003 because he knew that the returns did not report all of his total income. These Counts are properly joined because Keough failed to

report income that he obtained as a direct result of the underlying charges:  approximately $29,000 in income that he derived from his extortion of Frank Ware (Count 29) discussed at page 13-14, his fraudulent theft of goods and services (Count One) discussed at pages 3-4, his fraudulent receipt of his full wages and his theft of other FOH worker's wages (Counts 2-14) discussed at pages 4-6, his fraudulent receipt of ISSI rental income (Counts 17-22) discussed at pages 6-7; and capital gain from the fraudulent real estate transactions with Angel Guzman (Counts 24-25) discussed at pages 8-9.

Because the tax counts involve a failure to report income that Keough generated from these other counts, joinder based upon a common scheme or plan is proper.  "Indeed, the failure to report may help conceal the fraud."  United States v. Randazzo, 80 F.3d 623, 627 (1st Cir. 1996) (noting that common scheme or plan is "often used to join false statement claims with tax fraud charges where the tax fraud involves failure to report specific income obtained by the false statements.").[9]

Keough claims that he is prejudiced by joinder in the present case because he may wish to testify at trial on the tax charges but not on the remaining charges is insufficient to support severance.

---

[9]   Keough's reliance on Randazzo is misplaced, since in that case the First Circuit rejected joinder where, unlike here, the tax counts and the "shrimp" counts bore no relation to each other except "pure happenstance."  Randazzo, 80 F.3d at 627.

"[A] defendant may deserve a severance of counts where the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying in the other." United States v. Alosa, 14 F.3d 693, 695 (1st Cir. 1994) (internal quotation marks and citations omitted).  In order to do so, however, a defendant must "offer in a timely fashion 'enough information' so that the court can weigh 'the considerations of judicial economy' against the defendant's 'freedom to choose whether to testify' as to a particular charge." Id. (quoting Scivola, 766 F.2d at 43).

Here, Keough has failed to proffer "a convincing showing that he has both important testimony to give concerning [the tax counts] and strong need to refrain from testifying in the other" counts." Alosa, 14 F.3d at 695.  Instead, defense counsel[10] wanly asserts that Keough "wishes to testify that he believed his tax returns to be true and accurate at the time that he filed them, that he reported all of his total income on said tax returns, and [sic] his subjective believe as to the accuracy of said returns and that he did not violate the law with regard thereto." Motion, ¶ 2.  Such self-serving, general testimony does not constitute a "convincing showing" of "important testimony." Alosa, 14 F.3d at 695.

---

[10]  Notably, Keough himself has failed to submit an affidavit in support of his motion.

Keough mistakenly relies on <u>United States v. Jordan</u>, 112 F.3d 14 (1st Cir. 1997), since that case featured a detailed offer of proof that Keough notably fails to provide. In <u>Jordan</u>, the defendant's proffered testimony included assertions that he previously handled his own tax filings; he had reviewed IRS instructions and conducted in independent research regarding tax laws; he believed that certain compensation trust funds were not taxable; and he had filed certain tax forms following the advice of counsel. <u>Id.</u> at 17.

By contrast, Keough only asserts, in substance, that he truthfully reported his income. Such a blanket denial of culpability is not the type of "important testimony" found sufficient to support severance. To the contrary, it is the "sort of empty rhetoric" that the First Circuit has found "insufficient to mandate severance on the basis of a perceived need to testify." <u>United States v. Fenton</u>, 367 F.3d 14, 22 (1st Cir. 2004) (approving denial of severance where defendant proffered a "bald assertion of innocence" and an "unparticularized claim that the government's witnesses were not credible").

Many defendants presumably would like to make an unequivocal denial of certain charges while remaining silent on others that they cannot as easily explain away at trial. If severance were proper under those circumstances, then the joinder of counts would be a rarity in the criminal law. Such is not the case. "Were the law

37

otherwise, severance would be available on demand." Id.; see Jordan, 112 F.3d at 17 (distinguishing detailed testimony concerning good faith defense from blanket denial of charges); Alosa, 14 F.3d at 693 (holding that defendant's testimony not sufficiently important to warrant severance where there is no proffer as to how testimony would convincingly explain incriminating evidence); United States v. Alexander, 135 F.3d 470, 477 (7th Cir. 1998) (severance appropriately denied where defendant's proffered testimony contains only general assertions and fails to provide specific explanation for charged fraudulent representations).

Second, Keough has failed to provide the required "strong need" to refrain from testifying on the obstruction of justice charge. "[W]hile the courts zealously guard a defendant's Fifth Amendment right not to testify *at all*, the case law is less protective of a defendant's right to testify selectively, addressing some issues while withholding testimony on others that are related." Alosa, 14 F.3d at 695 (emphasis added). Keough's asserted desire to avoid testifying about the remaining counts does not constitute a sufficiently strong need not to testify to warrant severance. Moreover, even if the tax fraud cases were severed, Keough would still be subject to cross examination in the tax trial concerning his various fraud, perjury, and false statements, because that conduct is relevant to his character for truthfulness or

untruthfulness under Fed. R. Evid. 608(b).  <u>Alexander</u>, 135 F.3d at
478.

In sum, more is required of Keough than the simple assertion
that he would like to deny certain charges but not others.
Accordingly, his motion to sever Counts 46-50 should be denied.

E.   <u>Keough Has Failed To Establish Prejudice</u>

Keough has failed to make the requisite "'strong showing of
prejudice.'"  <u>Tracy</u>, 989 F.2d at 1283 (quoting <u>Gray</u>, 958 F.2d at
14).  Indeed, Keough has offered no prejudice beyond the type of
"'standard fare [that exists] whenever counts involving discrete
incidents are linked in a single indictment,'" which the First
Circuit has repeatedly held is insufficient to require severance.
<u>Boulanger</u>, 444 F.3d at 88 (quoting <u>Taylor</u>, 54 F.3d at 974).

F.   <u>Judicial Economy Warrants Joinder</u>

Judicial economy strongly weighs against severance.  The
indictment in this case alleges fifty counts involving three
defendants.  Trial is expected to last approximately six weeks.

As outlined above, there is significant overlap in the evidence
supporting the underlying counts and the counts sought to be
severed.  Separate trials would result in the unnecessary
duplication of witnesses and exhibits and cause the government to
put on a substantial part of its case twice, or more, thus defeating
the clear benefits of a joint trial.  <u>See</u> <u>United States v. Magana</u>,
127 F.3d 1, 7 (1st Cir. 1997) ("There are obvious advantages in

39

judicial economy to the joint trial of defendants accused of the joint commission of crimes.") (citations omitted).   In effect, Keough is asking that he be tried four separate times: on the underlying counts, on Counts 27-28, Counts 31-45, and Counts 45-50. Keough's unsubstantiated claims of prejudicial spillover do not warrant the expense and inconvenience that would result from trying the same case more than once.

> G.   <u>Jury Instructions Can Cure Any Potential Prejudice</u>

Finally, although there would be no harm in trying Keough jointly with his co-defendants, any <u>potential</u> prejudice arising from a joint trial could be cured by a limiting instruction to the jury that there must be sufficient proof against each individual defendant for each count, and that such proof must be considered independently.   <u>Boulanger</u>, 444 F.3d at 88 (citing <u>Melendez</u>, 301 F.3d at 36).   Indeed, such an instruction is fairly mandated in a multi-defendant, multi-count trial such as this one.   It is well settled that juries are presumed to follow the court's instructions.   <u>See e.g.</u>, <u>United States v. Olano</u>, 507 U.S. 725, 741 (1993); <u>United States v. Rullan-Rivera</u>, 60 F.3d 16, 19-20 (1st Cir. 1995); <u>cf. United States v. Guyon</u>, 27 F.3d 723, 729 (1st Cir. 1994) (limiting instructions "cushion[] the impact and reduce[] any possible prejudice").   Thus, appropriate limiting instructions explaining that each defendant must be considered separately will eliminate any perceived prejudice.

III. <u>Conclusion</u>

For the foregoing reasons, the Government respectfully asks that the Court deny Keough's Motions To Sever Counts 27-28, 31-45, And 45-50 From The Second Superseding Indictment.

Filed this 27th day of November, 2006.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


    /s/ Steven H. Breslow
STEVEN H. BRESLOW
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

Hampden,  ss.                    Springfield, Massachusetts
                                 November 27, 2006


      I, Steven H. Breslow, Assistant U.S. Attorney, do hereby
certify that I have served a copy of the foregoing by electronically
filing and mailing said motion to:

Daniel Kelly, Esq.
101 State Street
Suite 715
Springfield, MA  01103
Counsel for defendant Francis G. Keough

Lori Levinson, Esq.
66 West Street
Pittsfield, MA  01201
Counsel for Defendant Angel T. Guzman

Michael Foy, Esq.
935 Main Street, Suite 203
Springfield, MA  01103
Counsel for Defendant Michael P. Hallahan


                           ___/s/ Steven H. Breslow___
                           STEVEN H. BRESLOW
                           Assistant United States Attorney


42