**DANIEL D. KELLY**
**ATTORNEY AT LAW**
**101 STATE STREET, SUITE 715**
**SPRINGFIELD, MA 01103**
**TELEPHONE (413)-733-0770**
**FACSIMILE (413)-733-1245**
Email: dkelly@dankellylawoffice.com

William M. Welch II, Esquire
United States Attorney's Office
Federal Building and Courthouse
1550 Main Street, Room 310
Springfield, MA 01103

Re:   **United States v. Francis Keough, et al.**
      **CR-N-30032-MAP**

Dear Attorney Welch,

    Upon review of the automatic discovery letters and documents provided by your office, and the Second Superseding Indictment regarding the above-referenced matter, I hereby make the following request pursuant thereto, and Rules 12(b)(4) and 16 of the Federal Rules of Criminal Procedure and Local Rule 116. This request is made in supplementation to the request made by prior counsel in this dated April 22, 2004, and filed with the court on May 15, 2005, and currently listed as document number 18 in this case. In addition, I am hereby incorporating the requests made in said document number 18 herein, as to the Second Superseding Indictment returned by the Grand Jury in this case on January 12, 2006.

    Pursuant to the rulings, principles and authorities set forth in the cases of United States v. de la Cruz-Paulino, 61 F.3d 986 (1st Cir. 1995); United States v. Bortnovsky, 820 F.2d 572 (2nd Cir. 1987); United States v. Anderson, 416 F.Supp.2d 110 (D.D.C. 2006); United States v. Falkowitz, 214 F. Supp. 2d 365 (S.D. N.Y. 2002); United States v. Upton, 856 F. Supp. 727 (E.D.N.Y. 1994); United States v Laughlin, 768 F. Supp 957 (N.D.N.Y. 1991); United States v. Poindexter, 727 F. Supp. 1470 (D.D.C. 1989); United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y 1978); United States v. Countryside Farms, Inc., 428 F.Supp. 1150, 1154 (D.Utah 1977), and due to the voluminous documents involved in this case, the Defendant requests that the Government specifically identify:

    a)    which documents the Government intends to offer at trial;

    b)    which documents on which a Government witness will rely or to which said witness will refer; and

    c)    which documents are material to Defendant's preparation of his defense.

Please note that for purposes of this request, the term "document" shall include all books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control.

In addition, as to each item of documentary or tangible evidence obtained by the Government as described herein, the Defendant requests that the Government provide a statement as to how such evidence was obtained and, if the evidence was obtained by seizure or by subpoena, a description of the date on and exact location at which the property was seized and party from whom it was subpoenaed, and all documents relating thereto:

1. Any and all statements of Defendant's "agents, representatives and employees," which are deemed to be made pursuant to the Defendant's authority, as to which the statement thereby constitutes a "statement by the Defendant" which is discoverable under Federal Rule of Criminal Procedure 16(a)(1)(A). This request includes any and all statements, oral, written or recorded, or the substance of any oral statements, made by or purported to have been made by Defendant's alleged agents, representatives and employees, whether before or after arrest, whether or not the Government intends to offer the statements in evidence at the trial, including but not limited to Grand Jury testimony; and any documents, instruments or forms prepared by, signed, reviewed, or otherwise adopted by Defendant's agents, representatives and employees as their own statements and the portion of any written record containing the substance of those statements.

2. Any and all statements of the co-Defendants and alleged "co-conspirators", including but not limited to; Alfonso Carrano, Robert Cote, Daniel McNamee, Jose Roman, Paul Sarno, Thomas Smith, and Frank Ware (whether indicted or unindicted), whether written or oral, subsequently reduced to writing, tape recorded, transcribed or summarized in agent's reports, or copies thereof, within the possession, custody or control of the Government, the existence of which is known or by the exercise of due diligence may become known to the attorneys for the Government.

3. Any and all reports and results of scientific tests, experiments and examinations, including specifically any and all related notes, logs, charts, work papers and raw test results, including without limitation all such reports and results, etc., relating to handwriting analysis, scientific identification or other analysis of documents purportedly used in furthering the alleged criminal activities and/or conduct in this case.

4. Any and all evidence and/or information pertaining to any alleged conduct of the Defendant which the government intends to introduce at trial as constituting an implied admission of guilt by the Defendant.

5. Any and all evidence and/or information that the government intends to offer at trial pertaining to the conduct by the Defendant (or of any co-defendant) that is not charged on the face of the indictment, that the government believes is admissible to show identity, common plan, scheme or design and the like, including a description of the conduct that the government will seek to introduce.

6. Any and all evidence from and/or information about any eyewitness of alleged criminal

activities or conduct involved in this case for which the prosecution has a name and/or address, and which the government does not intend to call at trial. United States v. Cadet, 727 F.2d 1453 (9th Cir.1984).

7. A written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial, as provided by Rule 16(a)(1)(G).

8. Any and all names and addresses of individual witnesses who the Government intends to call at trial either in its case in chief or as rebuttal witnesses herein.

9. Any and all names and addresses of persons who have knowledge pertaining to this case, or who have been interviewed by the Government or their agents in connection with this case.

10. Any and all F.B.I. and local arrest and conviction records of all persons in Paragraphs 8 and 9 the Government plans to call as witnesses.

11. Written statements of all persons in Paragraphs 8 and 9 who the Government does not plan to call as witnesses.

12. The name, identity and whereabouts of any informer who gave information leading to the seizure and arrest of the Defendant herein or investigating of this cause or the investigation, arrest or seizure of evidence in other causes that may have lead to the identification of witnesses, evidence or arrest of the Defendant in this cause.

13. All tangible objects, books, papers, documents, fingerprints, tape recordings, voice prints, handwriting samples, video recordings, motion pictures, photographs, maps, or copies or portions thereof, which the Government has gathered as evidence against defendants or which are material to the preparation of their defenses, regardless of whether the Government intends to offer them in its case-in-chief, including, but not limited to:

   a) All financial records of any alleged co-conspirators (whether indicted or unindicted) and codefendants acquired from any source, including, but not limited to, promissory notes, checks, negotiable instruments and communications with banks and credit agencies, which relate in any way to his or her finances, assets or expenditures;

   b) All financial records of the defendants obtained by the Government during the course of the instant investigation, including, but not limited to, those reflecting deposits of monies in and withdrawals of monies from financial institutions, and those records reflecting transfers of monies between such institutions;

   c) All applications or orders seeking information about any of the Defendants and alleged co-conspirators (whether indicted or unindicted) pursuant to 26 U.S.C. § 6103 (tax return information);

    d)      All tape recordings of Defendants' voices made during or in connection with the matters alleged in the indictment, or on any other occasion;

    e)      All tape recordings of any statement made by any declarant, which might be offered for any purpose permitted by Federal Rules of Evidence 801(d), 803, 804 or 805;

    f)      All enhanced tape recordings and all transcripts of tape recordings requested in subparagraphs d and e, supra;

    g)      All devices or machines used for recording Defendants' voices;

    h)      All telephone toll records which were acquired as a result of the investigation of Defendants or any alleged co-conspirator (whether indicted or unindicted);

    i)      Any documents acquired from the Internal Revenue Service or any other government agencies (federal, state and local) which relate to any alleged co-conspirator (whether indicted or unindicted) or co-defendant, his assets or his expenditures;

    j)      All documents, records, bills, forms and/or receipts and like material allegedly signed by any Defendant any alleged co-conspirator (whether indicted or unindicted);

    k)      All F.B.I., special agent and police investigative reports, including, but not limited to, surveillance logs or documents reflecting the whereabouts or movements of any Defendant and alleged co-conspirator (whether indicted or unindicted);

    l)      A full and complete listing of all tangible objects, books, papers, documents, fingerprints, tape recordings, voice prints, handwriting samples, video recordings, motion pictures, photographs, maps, or copies or portions thereof that have been lost or destroyed, to the extent that such would have been discoverable;

    m)      An identification of all of the items requested in the preceding subparagraphs that the Government intends to introduce at trial.

14.      Any and all statements made by any Defendant to, or overheard by, law enforcement officers before or after his/her arrest which are the subject of verbatim or summarized reports or written memoranda by the officers, not otherwise produced, regardless of whether or not such defendant knew that the person to whom he/she was making the statements or who was overhearing the statements was a Government agent.

15.      Any and all statements made by any Defendant to, or overheard by, persons who were acting in the capacity of informants or cooperating individuals, or other third parties, whether or not the Government intends to call such persons as witnesses at trial, which

statements are the subject of verbatim or summarized reports or written memoranda either by the person hearing the statements, or by law enforcement officers, or by other individuals receiving a recital of the Defendant's statements, regardless of whether or not the Defendant knew that the person to whom he/she was making the statements or who was overhearing the statements was an informant or cooperating individual or that the statements would come into the Government's possession, custody or control.

16. As to each statement described in paragraphs 4 & 5 above, the date and time each such statement was uttered, the location of the declarant and the identity of persons present at the time of its utterance.

17. The identity, including name and address, of any and all persons who have provided the Government with information containing any statements made by defendants, or whom the Government knows were present when any of defendants' statements in the Government's possession, custody or control were made.

18. A description of testimony or other evidence which the Government intends to use against any defendant which derives in any way from any confession, admission or statement allegedly made by any defendant.

19. A list of the names, addresses and present locations of each and every person interviewed by the Government as a prospective, possible, or potential witness in this case, whether or not the Government now intends to call such person as a witness in its case-in-chief at trial, including, but not limited to:

   a) Informants/witnesses who participated in the activities of the conspiracies, continuing criminal enterprise and the substantive offenses charged in the Indictment;

   b) Informants/witnesses who were present during any act taken by any defendant, codefendant or alleged coconspirators in furtherance of the conspiracies and enterprise charged in the Indictment;

20. A list of the names, addresses and present locations of each and every person interviewed by the Government in the course of its investigation into the background, habits, activities, and/or whereabouts of any defendant or co-conspirator (whether indicted or unindicted).

21. A list of the names, addresses and present locations of each and every:

   a) Eyewitness to the commission of any overt act of the offenses alleged in the indictment;

   b) Informant who was present at the commission of any overt act of the offenses alleged in the indictment;

   c) Unindicted alleged coconspirator known to the Government;

22. A list of the names and addresses of each and every law enforcement officer, or officer of any agency, whether federal or state, involved in the investigation of this case.

23. Copies of personnel files of all law enforcement officials involved in the investigation of this matter or whom the Government anticipates calling at trial, including, but not limited to, the personnel files of Special Agents Clifford W. Hedges and Susan Kossler. United States v. Dominguez -Villa, 954 F.2d 562 (9th Cir. 1992); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Garrett, 542 F.2d 23 (6th Cir. 1976); United States v. Deutsch, 475 F.2d 55 (5th Cir. 1973); United States v. Austin, 492 F. Supp. 502 (N.D. Ill. 1980).

24. A statement of whether or not any co-defendant or alleged co-conspirator (whether indicted or unindicted) in this case or any such person in any related case has provided information to the Government about the offenses charged in an effort to obtain consideration, i.e., has cooperated or has indicated an intention to provide such information, and, if so, the date when any such communications commenced and the substance of any such communications.

25. The Defendant specifically requests due to the complexity of this case and the numerous witnesses involved in this case that the Government furnish Jencks Act materials at least three months in advance of trial.

26. A statement as to whether the Government intends to offer any evidence of any prior criminal conviction of any codefendant, should he/she testify, pursuant to Fed.R.Evid. 609, and, if so, a statement as to the particulars of said conviction; and disclosure of any codefendant's prior record and information as to how much time he/she actually served (if any) under any prior sentence.

27. Disclosure of any summary, chart or depiction the Government intends to offer as evidence or seeks to utilize before the jury, either during argument or during the presentation of evidence.

28. A statement as to whether any potential Government witness was subjected to a polygraph test by, or with the awareness of or at the direction of the Government during the investigation and preparation of the instant indictment, or during the investigation and preparation of any related indictment, and, if so, disclosure of all documents relating thereto.

29. Disclosure of the following regarding voice identification procedures employed by the Government on tape recordings intended to be offered as evidence at trial or on tape recordings obtained during the course of the investigation, whether said recordings were illegal, or the fruit of court-authorized electronic surveillance or consensual recording or monitoring:

   a) The name and address of each and every person who has identified each and every

        defendant or other person as a participant in a recorded conversation;

   b)    The time, date and place of each and every identification of each participant in a recorded conversation;

   c)    The names and address of any other persons present, both civilian and law enforcement, when any voice identification occurred;

   d)    The method used to identify the voice of each defendant and/or participant in a recorded conversation;

   e)    The name and address of each and every person who, having listened to a tape recorded conversation, failed or refused to identify a voice as being that of a Defendant;

   f)    The name and address of each and every person who has mistakenly or incorrectly identified a voice as being that of a defendant, or identified a voice as being similar to that of a defendant.

   g)    The date, time and place of each occurrence of mistaken or incorrect voice identification of a defendant or other participant.

30.    Whether any electronic tracking devices were used in the investigation of this case. If so, disclosure of copies of:

   a)    Any application and order authorizing the use of such device including applications for extension, orders for extension and periodic reports;

   b)    The dates, times and locations where such device(s) were utilized;

   c)    The target of such device or devices; and

   d)    Any reports made relating to the installation and monitoring of such devices.

31.    Whether any "mail covers" were utilized in this investigation. If so, disclosure of:

   a)    The extent and duration of each mail cover;

   b)    The circumstances under which it was instituted, including the names and positions of all persons who authorized it;

   c)    The procedure by which it was instituted, including the names, and positions of all persons involved therein;

   d)    The purported justification for its institution;

Nov. 20. 2006 2:17PM Case 3:04-cr-30032-MAP Document 154-2 Filed 11/27/2006 Page 7 of 10

   e)  The information it produced; and

   f)  The names and positions of all persons to whom such information was transmitted and the date of its transmission.

32. Whether any devices to record telephone numbers dialed or pulsed from a particular telephone (pen registers, traps and/or tracers) were utilized in connection with this investigation. If so, disclosure of:

   a)  The telephone number or numbers and subscriber(s) as to which each such device was utilized and the dates and duration of use;

   b)  Any application, affidavit, and order authorizing the use of such devices including any applications and orders for extensions and periodic reports;

   c)  Copies of each machine print-out showing the date, time and numbers dialed or pulsed; and

   d)  Copies of any records showing the names and addresses of the telephone subscribers of the target numbers.

33. Disclosure of the following with respect to any so-called "consensual" (i.e., "non-Title III") monitoring of oral or electronic communications:

   (a)  All tape recordings made as a result of or during the course of any confidential or cooperating informant or undercover agent wearing a concealed body recorder or transmitter;

   (b)  Disclosure of all procedures used for the authorization of a body recorder or transmitter, and any consent forms or other documents signed by any confidential informant or cooperating informant in connection with his/her wearing a body recorder or transmitter;

   (c)  All documents generated or prepared by agents of the United States, including but not limited to the Federal Bureau of Investigation and local police authorities of Massachusetts, Rhode Island, or any other state which relate to any confidential or cooperating informant's status as an informant for any governmental agency in connection with this criminal investigation;

   (d)  All briefing, debriefing, or other reports or memoranda made in relation to or connection with any confidential or cooperating informant's role or involvement in connection with this investigation;

   (e)  What procedures, if any, of the Justice Department were used or followed in connection with any confidential or cooperating informant and a copy of any written policy or procedures which were followed, including but not limited to,

"case initiation reports," "sensitive criminal investigation reports" as contemplated by the U.S. Attorneys Manual; and

(f) Any and all reports, notes, logs or other evidence concerning physical surveillance of any confidential or cooperating informant during any time when any of them was wittingly or unwittingly acting as an agent of or informant for the Government in connection with this investigation.

34. Disclosure of all evidence the Government intends to introduce at trial pursuant to Fed.R.Evid. 404(b) against any defendant or co-defendant.

35. A statement as to whether the Government intends to offer any evidence at trial involving violence and, if so, notice of the details of such violence.

36. The transcript of testimony given by any person before the Grand Jury in this cause which provides the nature and substance of any statements attributable to any of the Defendants or co-conspirators (whether indicted or unindicted).

37. The substance of any and all statements or discussions had with any of the co-Defendants, witnesses, or alleged unindicted co-conspirators herein, or with any other such person's Counsel indicating a promise or a suggestion of leniency, compensation, assurance not to prosecute, agreement to proceed on only certain counts of an Indictment, representation with respect to yet uncharged misconduct, or any benefit accruing to said individuals whatsoever in exchange for their compensation, assistance or testimony at the trial herein.

38. Copies of all invoices, checks, and any and all other documents caused to be delivered by any of the Defendants through the United States Postal Service, or any private or commercial interstate carrier, in furtherance of the alleged conspiracy to defraud the Friends of the Homeless, Inc., the City of Springfield, the Commonwealth of Massachusetts, the United States Department of Housing and Urban Development, and the public.

39. Copies of all false documentation caused to be submitted by any of the Defendants to the Friends of the Homeless, Inc., the City of Springfield, the Commonwealth of Massachusetts, and the United States Department of Housing and Urban Development in order to obtain reimbursement for expenses incurred by the Friends of the Homeless, Inc. for the personal benefit of any of the Defendants.

40. Copies of all documents reflecting, relating, or referring to or otherwise indicating or evidencing goods and services procured by the Defendant, Francis Keough, without any competitive bids, from friends, family, and political associates, and documents reflecting, referring to or otherwise indicating the award of jobs to friends, family, and political associates as a reward for actual or anticipated personal services and favors performed on behalf of the Defendant, Francis Keough.

41. Copies of all documents reflecting, relating or referring to residents and inmates on work

release at the Friends of the Homeless, Inc. that performed personal work for the Defendant, Francis Keough, and documents reflecting, relating, or referring to or otherwise indicating or evidencing that the Defendant, Francis Keough, provided these individuals with housing at the Friends of the Homeless, Inc., waived rental obligations due and owing by these individuals, and arranged for jobs for these individuals both at the Friends of the Homeless, Inc. and elsewhere.

42. Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that the Defendants charged personal work performed on the Friends of the Homeless, Inc.'s time, and hours not worked at Friends of the Homeless, Inc. to the Friends of the Homeless, Inc., and in turn caused the Friends of the Homeless, Inc. to seek reimbursement from the City of Springfield, the Commonwealth of Massachusetts and the United States Department of Housing and Urban Development for said hours through the submission of false and fraudulent time sheets.

43. Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that the Defendant, Francis Keough, permitted the Defendants, Angel Guzman and Michael Hallahan, Paul Sarno, or anyone else to receive pay for hours not worked at the Friends of the Homeless, Inc.

44. Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that the Defendant, Francis Keough, referred the Defendants, Angel Guzman and Michael Hallahan and others to a loan officer for a national mortgage company, who processed and caused the processing of false and fraudulent loan applications on behalf of the Defendants and others.

45. Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about May 21, 1997, the Defendant, Francis Keough, caused the appointment of a Friends of the Homeless, Inc. Board Member for whom the Defendant, Francis Keough, had negotiated a position at the Hampden County Employment and Training Consortium, and that this Board Member later arranged a job at the Hampden County Employment and Training Consortium for the Defendant, Francis Keough's, brother.

46. Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about July 31, 1997, the Defendant, Francis Keough, received $50,000.00 in consulting fees related to the Memorial Parish House project in part due to the Defendant, Francis Keough's, assistance in arranging a job at the Hampden County Employment and Training Consortium for the son of the former Executive Director of the Springfield Housing Authority.

47. Copies of all documents reflecting, relating or referring to or otherwise indicating or evidencing that on or about August 1, 1997, the Defendant, Francis Keough, used the $50,000.00 payment referenced in the preceding paragraph towards the purchase of a parcel of property at 59 Oyster Drive, Charleston, Rhode Island, in the name of a nominee.