```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )    CR-N-04-30032-MAP
                               )
              Plaintiff,       )
                               )
     vs.                       )
                               )
FRANK G. KEOUGH, III,          )
                               )
              Defendant.       )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANT FRANCIS G. KEOUGH, III'S MOTION TO SELF-REPORT TO FEDERAL FACILITY**

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Steven H. Breslow, Assistant United States Attorney, hereby files the Government's Opposition To Defendant Francis G. Keough, III's Motion To Self-Report to Federal Facility (Docket No. 193) (the "Motion").

The government respectfully submits that the Motion should be denied, since the defendant essentially seeks a "get out of jail card" for a summer weekend at home without a valid justification for even a brief reprieve of his sentence.

I.  The Defendant's Motion Should Be Denied

   A.  The Judgment

On March 29, 2007, this Court entered a Judgment (Docket Nos. 186 and 189) (the "Judgment") that sentenced the defendant to a term of three years incarceration; $145,000.00 in restitution; $145,000.00 in forfeiture; a $50,000.00 fine; a $1,300.00 special

1

assessment; and two years supervised release. The Court specifically recommended that the defendant be designated to a facility closest to his residence.[1] The defendant has now moved the Court for an order that would provide the defendant a weekend reprieve from his sentence to permit the defendant to deal with unspecified "familial issues." Motion, at 1.

B.  The Defendant's Offense

As set forth in far greater detail in the Pre-Sentence Report dated March 1, 2007 and revised March 22, 2007 (the "PSR"), the defendant masterminded a vast and damaging series of crimes centered around his corrupt operation of Friends of the Homeless, Inc. ("FOH"), a vital institution serving Springfield's homeless population. As FOH's Executive Director from 1994 to 2004, the defendant looted the FOH through a broad and systemic pattern of theft and fraud.

In short, the defendant was no friend of Springfield's vulnerable homeless people -- to the contrary, in order to line his own pockets and live in a luxurious Rhode Island beach house, he shamelessly victimized both the homeless and the institution that he had pledged to serve. The defendant's thievery was nearly boundless, as he even stole the very mattresses from his homeless shelter.

---

[1] According to the United States Marshal Service, the defendant has been designated to the minimum security prison camp at FCI Schuylkill in Pennsylvania.

Later, when the federal government began to investigate the defendant's offenses at FOH, he flouted the authority of both law enforcement and this Court by repeatedly obstructing justice, tampering with witnesses, lying to investigating agents, and committing perjury before the grand jury. Indeed, the defendant went so far as to return the stolen mattresses to FOH from his Rhode Island beach house to avoid their discovery by searching agents.

In particular, the defendant pleaded guilty to the following charges in the Second Superseding Indictment (the "Indictment"):

1. Count One, charging a violation of Title 18, United States Code, Sections 371, 1341, and 1346 (conspiracy to commit mail fraud);

2. Counts Twelve, Fourteen, Seventeen, Nineteen, Twenty-Three, and Twenty-Four, each charging a violation of Title 18, United States Code, Sections 1341 and 1346 (mail fraud);

3. Count Twenty-Nine, charging a violation of Title 18, United States Code, Section 1951 (extortion);

4. Count Thirty, charging a violation of Title 18, United States Code, Section 1503 (obstruction of justice);

5. Count Thirty-Two, charging a violation of Title 18, United States Code, Section 1001 (false statements);

    6.    Count Thirty-Four, charging a violation of Title 18, United States Code, Section 1512 (witness tampering);

    7.    Count Forty-four, charging a violation of Title 18, United States Code, Section 1623(a) (perjury); and

    8.    Count Forty-Six, charging a violation of Title 26, United States Code, Section 7206(1) (filing a false income tax return).

C.    <u>The Defendant's Contempt</u>

In addition to these thirteen charges, the defendant was indicted on other charges of mail fraud, obstruction, witness tampering, false statements, and criminal contempt, which the government later dismissed pursuant to a plea agreement. The defendant's criminal contempt was based upon the following facts.

On July 29, 2005, the defendant was arraigned on the Indictment. Magistrate Judge Kenneth P. Neiman found that the defendant had violated his conditions of release based in part upon several instances of obstruction and witness tampering charged in the instant indictment,[2] but permitted him to remain on release and directed him not to have any contact with any witnesses or potential

---

[2] The government had also proffered evidence, not charged in the instant indictment, that on April 20, 2005, the defendant threatened Special Agent Clifford Hedges of the FBI as Hedges attempted to serve the defendant's wife with a grand jury subpoena.

witnesses. On August 1, 2005, Judge Neiman memorialized that order into writing.

Shortly after entry of that order, the defendant had his wife call Witness A at FOH and asked him to come over to 1117 Sumner Avenue to look at a faulty water heater. Upon arrival, the defendant began asking Witness A whom he thought was cooperating against him. Witness A left the house and immediately contacted the FBI.

On August 1, 2005, Special Agent Clifford Hedges of the FBI served Michael Hallahan for an appearance on August 4, 2005. Between July 29, 2005 and August 11, 2005, the defendant told Witness E that Hallahan had received a subpoena and then presented Witness E with a handwritten statement that outlined a false, exculpatory statement regarding fraudulent FOH timesheets.

On August 11, 2005, Judge Neiman revoked the defendant's bail.

D.   The Defendant's Sentencing

At the defendant's sentencing, this Court determined the defendant's advisory guidelines range to be 46 to 57 months. The government recommended that the defendant be sentenced to 57 months, but this Court imposed a 36-month sentence based largely upon the severe medical condition of the defendant's son. Judgment, at 9. Because the defendant had been in custody since August 4, 2005, his sentence amounted to approximately seventeen additional months incarceration.

E.  The Defendant Should Not Be Released, Even For A Weekend

Having already been spared a much lengthier term of incarceration, the defendant now seeks a weekend respite at home before self-surrendering. The defendant rests his claim for release based upon two factors: (1) saving the government the costs and expenses related to moving the defendant to FCI Schuylkill; and (2) allowing the defendant to "deal with any and [sic] familial issues that the defendant may not be able to deal with while incarcerated. . . ." Motion, at 1.

The government respectfully opposes this request on the following grounds. First, I have consulted with Deputy United States Marshal Daniel Spellacy, who informed me that the Marshals Service has sufficient resources to transport the defendant. Moreover, the defendant's desire to save the government any costs rings false, in light of the defendant's primary role in leaching federal and state funds from FOH and his reluctance to liquidate his Rhode Island home to pay approximately $57,000 in court-ordered forfeiture to the United States, as well as to satisfy his outstanding $50,000 fine and $145,000 restitution obligations. In sum, the government respectfully submits that any money expended to transport the defendant in custody to FCI Schuylkill is money properly and well spent.

Second, the defendant has failed to specify any of the "familial issues" that he claims would justify his release. This

vague and generalized claim, too, is undermined by the fact that in August 2005, the defendant voluntarily consented (against the advice of his attorney) to the very custody that he seeks relief from now.

Lastly, the defendant's crimes, including witness tampering, obstruction of justice, false statements, and perjury, weigh heavily against any self-surrender, particularly in light of Magistrate Judge Neiman's findings that the defendant violated his pre-trial release conditions. Viewed in the context of the defendant's extensive obstructive conduct, the defendant's offer "not to have any contact with any individual involved in this case," Motion at 2, hardly guarantees that he will abide by any release condition ordered by this court. See 18 U.S.C. § 3143(a).

II. Conclusion

For the foregoing reasons, the Government respectfully requests the Court to deny the Motion.

Filed this 23rd day of May, 2007.

                    Respectfully submitted,

                    MICHAEL J. SULLIVAN
                    United States Attorney


                      /s/ Steven H. Breslow
                    STEVEN H. BRESLOW
                    Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

Hampden, ss.                                  Springfield, Massachusetts
                                              May 23, 2007

    I, Steven H. Breslow, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by electronically filing said motion to:

Daniel D. Kelly, Esq.
101 State Street, Suite 715
Springfield, MA 01103
Counsel for defendant Francis G. Keough, III

                                               <u>/s/ Steven H. Breslow</u>
                                               STEVEN H. BRESLOW
                                               Assistant United States Attorney