```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
          v.                  )    CRIMINAL NO. 04-30032-MAP
                              )
FRANCIS G. KEOUGH, III,       )
          Defendant.          )
```

**UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION AND OPPOSITION REGARDING
<u>ENTRY OF A PRELIMINARY ORDER OF FORFEITURE</u>**

Defendant Francis G. Keough, III (the "Defendant") admitted in his plea agreement that the real property located at 59 Oyster Drive, Charlestown, Rhode Island (the "Rhode Island Property") is subject to forfeiture.  However, the parties agreed that he would pay $145,000.00 in United States currency no later than two weeks prior to sentencing, in order to avoid forfeiture of the Rhode Island Property.  The Defendant failed to make the required payment, and now asks the Court to allow him to pay off his money judgment in installments.  As set forth below, to institute a long-term payment plan when the Defendant has admitted that the Rhode Island Property is subject to forfeiture is neither legally nor equitably appropriate under the circumstances of this case.

**Background**

On January 5, 2007, the Defendant pled guilty to a number of crimes, including mail fraud and theft of honest services, pursuant to a written plea agreement. In the plea agreement, the Defendant agreed to forfeit any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981 (a)(1)(C) and 28 U.S.C. § 2461 as a result of his guilty plea. The Defendant also admitted that the Rhode Island Property[1] is subject to forfeiture on the grounds that it constitutes or is derived from proceeds traceable to his offenses.

The Defendant and the U.S. Attorney's Office agreed that the Defendant would forfeit to the United States a sum of $145,000.00 in United States currency, representing the amount of proceeds from his violations the Defendant invested in the Rhode Island Property, in lieu of the Rhode Island Property. Pursuant to the plea agreement, the Defendant was to deliver $145,000.00 to the United States Attorney's Office no later than two weeks prior to sentencing.

On March 21, 2007, the United States received a check in the amount of $88,105.44 from the Defendant. The Defendant remitted no further payments before (or after) his sentencing on March 29,

---

[1] The United States incorrectly identified the property which the Defendant admitted was subject to forfeiture as 5 Desrosiers Street, Springfield, Massachusetts in its Motion for Money Judgment and Final Order of Forfeiture and its Motion for Preliminary Order of Forfeiture. See Document Nos. 175, 202.

2007. As part of his sentence, the Defendant was ordered to pay restitution in the amount of $145,000.00, a special assessment in the amount of $1,300.00, a fine in the amount of $50,000.00, and to forfeit $145,000.00 to the United States. See Document No. 199. The $88,105.44 that the Defendant paid on March 21, 2007 was originally credited to his forfeiture obligation, but the United States has moved that those funds be credited to the Defendant's restitution obligation instead. See Document Nos. 176, 177, 205. The Defendant's attorney has indicated that the Defendant will not oppose that motion. If the Court endorses the proposed Amended Money Judgment and Order Vacating Final Order of Forfeiture, the Defendant will have an outstanding forfeiture obligation of $145,000.00.[2]

## Argument

**A.  The United States is Entitled to Forfeiture of the Rhode Island Property, Up to the Amount of $145,000.00**

The Defendant admitted that he invested $145,000.00 in proceeds traceable to his crimes in the Rhode Island Property, and that the Rhode Island Property is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. Had it not been for the parties' agreement to

---

[2] Even if the Court denies the government's motion to credit the funds paid in March to restitution and to increase the forfeiture money judgment accordingly, the Defendant would owe $56,984.56 on his forfeiture judgment.

substitute $145,000.00 in currency, the Court could have entered a preliminary order of forfeiture against the Rhode Island Property after the Defendant plead guilty.  See Fed.R.Crim.P. 32.2(b)(1)("As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted ... the court must determine what property is subject to forfeiture under the applicable statute").

The Defendant had the opportunity to avoid forfeiture of the Rhode Island Property, but he failed to comply with the terms of the plea agreement requiring him to make full payment of his forfeiture obligation two weeks prior to sentencing.  Indeed, almost five months after sentencing, his forfeiture judgment still has not been satisfied.  The Defendant is not entitled to a second bite of the apple.  To institute a long-term payment plan when the Defendant owns a directly forfeitable asset would not only be contrary to law, it would reduce the deterrent effect of criminal forfeiture.  See 18 U.S.C. § 981(a)(1)(C) (property traceable to proceeds of mail fraud is subject to forfeiture); Caplin & Drysdale v. United States, 491 U.S. 617, 630 (1989)("a major purpose motivating congressional adoption and continued refinement of the racketeer influenced and corrupt organizations (RICO) and CCE forfeiture provisions has been the desire to lessen the economic power of organized crime and drug enterprises"); United States v. Ursery, 518 U.S. 267, 291 (1996)

(forfeiture "serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts"). The United States is entitled to satisfaction of the money judgment without further delay. See, e.g., United States v. Friend, 2006 WL 1966594 (D. Or. April 27, 2006) (court ordered forfeiture of real property to satisfy money judgment after defendant defaulted on payment plan).

**B.   There is No Basis for Delaying Entry
of a Preliminary Order of Forfeiture**

The Defendant requests alternatively that the Court delay entry of a Preliminary Order of Forfeiture to allow him to resolve a long-standing dispute over access to the Rhode Island Property and sell the property. As set forth below, the United States is in a far better position than the Defendant to resolve the access dispute and sell the property, and those tasks should not be entrusted to the Defendant.

Contrary to the assertions in the Defendant's motion, it is unlikely that he can resolve the access dispute any time soon, if at all. The dispute between the Defendant and the Sachem Passage Association, Inc. (the "Association") over access to the Rhode Island Property dates back at least to 2003. The Defendant purchased the Rhode Island Property in 1999, and proceeded to construct a dwelling even though the property had no access to a public road. Sachem Passage Association, Inc. V. Keough, 2005 WL 2436224, at *1 (R.I. Super. 2005), attached as Exhibit B. The

Defendant used a driveway owned by the Association to access the Rhode Island Property, all without permission from the Association.  Id. at **9-10.  The Association sued the Defendant, and the Rhode Island Superior Court ultimately found against the Defendant, entering a declaratory judgment and permanent injunction barring him from using the Association's land.  Id. at **10-11.

All members of the Association would have to approve any proposed settlement of the access dispute, and there are 60 members of the Association.  See Affidavit of Christopher A. Anderson, attached as Exhibit A, ¶ 4.  Given the fact that there was animosity between some of the members of the Association and the Defendant, the Defendant's representations to the Court that he can settle the access dispute in short order are questionable, at best.  Id., ¶ 5.  Regardless, given the Defendant's current failure to fulfill over $250,000 in outstanding forfeitures, fines, assessments and restitution, and his pending request for a payment plan, it follows that the Defendant has no funds to pay the Association in exchange for access.

Notably, the Defendant's motion and the affidavit submitted in support thereof do not set forth the terms of the proposed offer to the Association.  They also do not include any sort of marketing plan for the Rhode Island Property, an appraised value, or an anticipated sale price.  The government simply cannot agree

to blindly leave the tasks of settling the access dispute and selling the Rhode Island Property in the hands of the Defendant. Aside from the fact that his convictions in this case include fraud, theft of honest services, perjury and false statements, the Rhode Island Superior Court made adverse findings regarding the Defendant's credibility with regard to the access dispute. See Sachem Passage Association, Inc., at *3 ("The court had significant concerns about Mr. Keough's credibility."); id. at *6 ("this court questions [Mr. Keough's] credibility"); id. at 1 n.4 (same). There is no guarantee that the Defendant will negotiate a reasonable settlement of the access dispute, nor is there any guarantee that he will market and sell the Rhode Island Property for its full value. Consequently, there is no guarantee that the Defendant's resolution of these issues will generate sufficient proceeds to satisfy his outstanding forfeiture, restitution, fine and assessment obligations.[3]

The United States, on the other hand, has the capability of settling the access dispute, and in fact is in a better position than the Defendant to do so, given his history with the Association. Upon sale of the Rhode Island Property and

---

[3] The United States has recorded liens against the Rhode Island Property for payment of the Defendant's restitution and fine obligations. A sale of the Rhode Island Property pursuant to a Final Order of Forfeiture would necessarily include payment of the Defendant's restitution, forfeiture and fine obligations before the net proceeds of the sale, if any, are released to the Defendant.

satisfaction of the Defendant's forfeiture, restitution and fine obligations, the proceeds of any such sale would be returned to the Defendant.  Forfeiture sales are conducted by whatever means are likely to generate the highest possible price.  Accordingly, it is in the best interest of all parties not to deny or delay entry of a Preliminary Order of Forfeiture.

## Conclusion

For the reasons set forth herein, and in the Motion for Preliminary Order of Forfeiture (Document No. 202), the United States requests that this Court enter a Preliminary Order of Forfeiture in the form previously submitted.

                                            Respectfully submitted,

                                            MICHAEL J. SULLIVAN
                                            United States Attorney

                                By:   /s/ Kristina E. Barclay
                                           KRISTINA E. BARCLAY
                                           STEVEN BRESLOW
                                           Assistant U.S. Attorneys

Date: August 16, 2007

**CERTIFICATE OF SERVICE**

    I, Kristina E. Barclay, Assistant U.S. Attorney, hereby certify that the foregoing Response was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                           /s/Kristina E. Barclay
                                           KRISTINA E. BARCLAY
                                           Assistant U.S. Attorney

Dated: August 16, 2007